IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KURT CHADWELL, Individually and as a Personal
Representative of the Estate of Decedent E.E. Chadwell,

        Plaintiff,

v.                                                                                          Case No.  20-1372-JWB

UNITED STATES OF AMERICA,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's partial motion to dismiss. (Doc. 10.) The motion has been fully briefed and is ripe for decision. (Docs. 11, 31, 32.) For the reasons provided herein, Defendant's motion is GRANTED.

**I.    Facts**

The facts set forth herein are taken from the complaint. This is a medical malpractice action against the United States under the Federal Tort Claims Act.

Following a stroke in the second half of 2013, Earl Chadwell ("Earl") sought treatment at the VA Medical Center ("VAMC") in Wichita, Kansas. The VAMC had a Transitional Living Center ("TLC"), which is also referred to as a Community Living Center. Earl was residing in the TLC following his stroke and until his death on August 17, 2014. (Doc. 1 ¶ 12.) While at the TLC, Earl was known to be a fall risk and, as a result, had been moved to a room that was closer to the nurses' duty station. Prior to February 2014, Earl's wheelchair was "equipped with a pressure sensitive chair alarm" due to his fall risk. (*Id.* at ¶ 14.) The alarm was affixed to the seat of the wheelchair and was "quite loud when activated." (*Id.* at ¶ 16.) Earl's sons, Plaintiff Kurt

1

Chadwell (referred to throughout as Plaintiff) and Mark Chadwell, helped Earl perform exercises in his room after VAMC personnel declined a request for additional physical therapy.

On February 11, 2014, Earl was able to walk to dinner with assistance. After dinner, Earl was returned to his room in his wheelchair by a VAMC employee. Later that evening, it was discovered that Earl fell in his bathroom and broke his hip. The complaint alleges that VAMC staff did not "properly activate, or turn on, the wheelchair alarm," "assure that the pressure sensitive wheelchair alarm...was in proper working order," or "timely respond to the audible wheelchair alarm." (*Id.* at ¶ 21.) The complaint further alleges that there was a staffing shortage on the evening of February 11, 2014, and there were often staffing shortages in the TLC.

On February 14, 2014, Earl underwent a hip replacement surgery at the VAMC. After the fall and surgery, Earl was "in constant, unbearable pain." (*Id.* at ¶ 25.) VAMC staff frequently told Earl that he "would have to endure his pain and wait for his next scheduled dose of pain medication." (*Id.* at ¶ 27.)

Prior to his fall and as a result of his stroke, VAMC personnel diagnosed Earl with dysphagia. Due to this condition, Earl was at significant risk of aspirating food and liquids. Earl could not receive food or liquids while in his bed "reclined beyond a certain position." (*Id.* at ¶ 30.) If this medical directive was not properly followed, "aspiration and aspiration pneumonia were foreseeable consequences." (*Id.*) Over Plaintiff's objection, a VAMC employee gave Earl food when he was reclined too far back in his bed. According to the complaint, Earl suffered from aspiration pneumonia on two or more occasions as a result of VAMC employees failing to follow this directive.

Earl died on August 17, 2014. The complaint was filed by Plaintiff Kurt Chadwell who is proceeding pro se. The claims are brought by Plaintiff individually and as personal representative

of Earl's Estate. The complaint alleges that Defendant was negligent by violating the appropriate standard of care in providing medical care to Earl. As a result of the negligence, Earl allegedly suffered pain, emotional distress, loss of enjoyment of life, loss of the relationship with Plaintiff, and death. The complaint further alleges that both Plaintiff and Mark Chadwell suffered emotional distress, mental anguish, and loss of their relationship with their father. (*Id.* at ¶¶ 58-59.) Based on the alleged negligence, the complaint asserts a wrongful death claim under K.S.A. 60-1901 and a survival claim under K.S.A. 60-1801. The complaint further asserts claims of negligent supervision and outrage.

Defendant United States now moves to dismiss all but Plaintiff Kurt Chadwell's claim of medical malpractice insofar as it is a wrongful death claim brought by an heir pursuant to K.S.A. 60-1901.

## II.     Standard

In order to withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff.[1] *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

## III.    Analysis

---

[1] Because Plaintiff is an attorney he is not entitled to the benefit of the rule requiring the court to liberally construe filings of pro se litigants. *Caranchini v. Hayden*, 2019 WL 2567734, *2 (D. Kan. June 21, 2019) ("The pro se liberality rule … does not extend to pro se plaintiffs who are licensed attorneys.") (citing *McNamara v. Brauchler*, 570 F. App'x 741, 743 (10th Cir. 2014) (finding that even disbarred attorneys are not entitled to the pro se liberality rule)).

A.   Pro Se Status

Defendant first moves to dismiss all claims brought by Plaintiff Kurt Chadwell on behalf of Earl's Estate or his brother Mark on the basis that an individual proceeding pro se cannot represent the interests of others. In response, Plaintiff argues that he is able to represent the interests of the Estate because he is a licensed attorney in Texas.

Under 28 U.S.C. § 1654, a federal court litigant has the right to act as his own counsel or proceed with counsel pursuant to the rules of the court. The right to appear pro se only applies to the "appearance for one's self." *Draughon v. United States*, 103 F. Supp. 3d 1266, 1284 (D. Kan. 2015) (citation omitted). "A non-attorney administrator may not proceed pro se when there are other beneficiaries of the estate." *Id.* (citing *Jones ex rel., Jones v. Corr. Med. Servs., Inc.*, 401 F.3d 950, 951–52 (8th Cir. 2005)). Here, there is no dispute that there are other beneficiaries of Earl's estate. "[W]hen an estate has beneficiaries or creditors other than the administratrix or executrix, the action cannot be described as the litigant's own, because the personal interests of the estate, other survivors, and possible creditors will be affected by the outcome of the proceedings." *See Jones*, 401 F.3d at 952 (citation omitted). Therefore, a personal representative of an estate, such as Plaintiff, cannot represent the estate here as he is not the sole beneficiary.

Plaintiff argues that he can in fact represent the estate because he is licensed in Texas. Plaintiff, however, is not licensed in this court nor is he licensed in the State of Kansas. Plaintiff provides no authority for the proposition that an attorney licensed in another state can represent third parties in another jurisdiction. If that was the practice, there would be no need for attorneys to obtain licenses in multiple jurisdictions.

In this court, attorneys must be admitted to practice to appear or they must be admitted pro hac vice and have local counsel. *See* D. Kan. Rule 83.5.1. Otherwise, they are allowed to proceed

4

pro se and appear personally on their own behalf. *Id.* In *Mann v. Boatright*, 477 F.3d 1140 (10th Cir. 2007), the pro se plaintiff was a licensed attorney in the State of Illinois who brought the action on behalf of herself and her father. *Id.* at 1148. Although it was not the central issue of the appeal, the Tenth Circuit held that the plaintiff had no right to prosecute the appeal on behalf of her father because she was not licensed in the State of Colorado nor had she been granted permission to practice before the circuit. *Id.* at 1150. Here, Plaintiff is not licensed in this District nor is he licensed in the State of Kansas. Therefore, Plaintiff cannot represent the Estate as he is not the sole beneficiary.[2] The Estate's claims are dismissed without prejudice.

Defendant also seeks to dismiss any claims brought by Plaintiff on behalf of Mark due to Plaintiff's pro se status. In response, Plaintiff states that he is not bringing any claims on Mark's behalf and the complaint does not identify Mark as a party. (Doc. 31 at 9-10.) Reviewing the complaint, it does allege injuries on behalf of both Plaintiff and Mark with respect to the claims of medical negligence and outrage. (Doc. 1 at ¶¶ 59, 81.) Based on Plaintiff's affirmative statement that he is not bringing any claims on behalf of Mark, and because he cannot bring these claims as he is proceeding pro se as discussed herein, Defendant's motion to dismiss any claims brought on behalf of Mark Chadwell is granted.

B.     **Plaintiff's Claim of Negligent Supervision**

Next, Defendant moves to dismiss Plaintiff's claim of negligent supervision on the basis that it fails to state a claim. Here, the complaint alleges that Defendant breached two duties with respect to Plaintiff. First, the complaint alleges that Defendant owed Plaintiffs the duty to exercise

---

[2] Plaintiff suggests that his brother "expressed a willingness to disavow or disclaim his interest in Earl's estate if doing so would establish Plaintiff as the sole beneficiary so that Plaintiff could then proceed pro se with respect to the estate's survival claim." (Doc. 31 at 19.) This is an entirely speculative statement which does not conclusively state that Mark has or definitely will disclaim an interest in the Estate. Moreover, Plaintiff, has not established that this would be a valid or timely waiver under Kansas law.

5

reasonable care to employ, supervise, and control medical personnel to provide competent care to Earl and perform work skillfully and carefully.  While that duty would be applicable to Earl, who was a patient in the care of the VAMC, the complaint fails to explain how the duty to provide competent medical care applies to third parties such as Plaintiff.  Plaintiff fails to make any argument in his response brief regarding this alleged duty and subsequent breach.

The complaint further alleges that Defendant owed Plaintiff a duty to keep Plaintiff safe while he was on Defendant's property.  Under Kansas law, the Kansas Supreme Court recently clarified that an employer owes a third party only one duty—reasonable care—and explained that general duty as follows: "an employer owes a duty of reasonable care under the circumstances to prevent harm to third parties caused by its employees when those employees are acting within the scope of their employment."  *Reardon for Est. of Parsons v. King*, 310 Kan. 897, 904, 452 P.3d 849, 855 (2019).  "While an employer's practices when hiring, training, and supervising its employees may be evidence of a breach of an employer's duty of reasonable care to third parties, they are not separate causes of action."  *Id.*  Therefore, under Kansas law, negligent supervision is a theory under which a negligence claim can be brought by a plaintiff.  *Id.*

The complaint, however, is completely devoid of any facts regarding how Defendant breached its duty of reasonable care to Plaintiff under the circumstances.  Plaintiff alleges that the duty was breached by Defendant's interference with Earl and Plaintiff's relationship. Notwithstanding Defendant's assertion that this is insufficient under Kansas law, the complaint lacks any facts supporting this conclusory allegation.

In his response, Plaintiff does not argue that his allegations contained in the complaint are sufficient to state a claim.  Rather, Plaintiff cites to allegations contained in his administrative claim, which was submitted on a standard form to the Department of Veterans Affairs.  (Doc. 31

6

at 11.)  Although the complaint references the administrative claim, (Doc. 1 at ¶ 8) Plaintiff has not attached it to his complaint or response.[3]  Instead, he asserts that he has copied portions of that claim into his brief.  On a Rule 12(b)(6) motion, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(d).  Notwithstanding this rule, the court may consider the complaint itself and any attached exhibits or any documents incorporated by reference without converting the motion to one for summary judgment. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009); *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998) ("[C]ourts have broad discretion in determining whether or not to accept materials beyond the pleadings."); *GFF Corp. v. Assoc. Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir. 1997).  A court also "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (citation omitted).  Because Plaintiff clearly referenced his administrative claim in his complaint, the court conceivably could have considered the document in ruling on the motion.  Plaintiff, however, has not attached the document for the court to review and Defendant objects to the court's consideration of Plaintiff's quotes due to Plaintiff's failure to attach the claim.  Therefore, the court cannot consider the block quotes contained in the response in determining whether the allegations are sufficient to state a claim.

Because the complaint does not allege plausible facts regarding a breach of Defendant's duty of reasonable care to Plaintiff, Defendant's motion to dismiss this claim is granted.

---

[3] Plaintiff claims that he did not attach the claim because it contains sensitive and personal information.  As a licensed attorney, Plaintiff should be aware that he can ask to file documents under seal if they contain personal information such as medical conditions.  D. Kan. R. 5.4.6.  Alternatively, Plaintiff can move to redact portions of the claim form so that the document can be filed in the record.

### C.     Plaintiff's Claim of Outrage

Defendant also moves to dismiss Plaintiff's claim of outrage.  A claim for outrage under Kansas law requires proof of four elements: (1) Defendant's conduct was "intentional or in reckless disregard" of Plaintiff; (2) "the conduct was extreme and outrageous;" (3) a causal connection between Defendant's conduct and Plaintiff's mental distress; and (4) Plaintiff's "mental distress was extreme and severe."  *Valadez v. Emmis Commc'ns*, 290 Kan. 472, 476, 229 P.3d 389 (2010).  There are two threshold requirements that must be met: (1) whether "[D]efendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery," and (2) whether "the emotional distress suffered by Plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it."  *Id.* at 477.

Defendant argues that Plaintiff's allegations cannot meet either requirement.  Again, Plaintiff fails to argue that the complaint's allegations regarding Defendant's conduct or his extreme emotional distress are sufficient to state a claim.  Rather, Plaintiff points to allegations in his administrative claim.  The court cannot consider these allegations as the court has not been provided with the claim.  Moreover, the court finds that the allegations in the complaint are insufficient to show that his emotional distress is extreme.  To recover for the tort of outrage, the emotional distress must be "extreme or severe."  *Valadez*, 290 Kan. at 478.  While "no laundry list of what qualifies as the requisite level of severity" exists, "headaches, sleeplessness, irritability, anxiety, depression, listlessness, lethargy, intermittent nightmares, and the like would probably not suffice."  *Id.* at 479 (citing Boston, Kline, & Brown, *Emotional Injuries: Law and Practice* § 22:7 (1998)).

Plaintiff's allegations in his complaint concerning the emotional distress caused by Defendant state that he "suffered shame, humiliation, emotional distress, mental anguish, emotional distress [sic], bruises, bleeding, lost enjoyment of life, loss of sleep, and anger." (Doc. 1 at 19.) These allegations are entirely conclusory and are not supported by facts that would support a finding that Plaintiff has stated a claim. *See Balmer Fund, Inc. v. City of Harper*, 294 F. Supp. 3d 1136, 1152 (D. Kan. 2018). In his response, Plaintiff asserts that it would be reasonable to infer that he has suffered "severe depression if not post-traumatic stress disorder" due to Defendant's conduct. (Doc. 31 at 29.) Plaintiff, however, does not state that he in fact has suffered from these mental conditions as a result of Defendant's conduct. Plaintiff's assertion that the court should infer that he could have these conditions is not supported by any authority. It is Plaintiff's burden to plead facts that support a claim. Plaintiff points to no facts in the complaint which could support an inference that Plaintiff has a mental health condition as a result of Defendant's conduct towards Plaintiff.

Therefore, he has failed to state a claim of outrage.

**D. Motion to Amend**

Recognizing the potential problems with the complaint, Plaintiff seeks leave to amend. Plaintiff, however, has not sought leave to amend in accordance with this court's rules which require Plaintiff to attach the proposed amended complaint when seeking leave. D. Kan. R. 15.1. Therefore, the request to amend is denied as Plaintiff has not submitted a proposed amended complaint nor has he sufficiently established that the amended complaint would not be futile.

Because Plaintiff and the Estate may be barred under the statute of limitations to refile the claims dismissed herein in another action, the court will allow Plaintiff to file a motion to amend within 30 days of this order.

### IV.     Conclusion

Defendant's motion to dismiss is GRANTED.  This order will be stayed for 30 days in order to allow Plaintiff to seek leave to amend his complaint to cure the deficiencies identified herein or retain counsel to proceed on behalf of the Estate.  If Plaintiff does not seek leave to amend within 30 days and/or retain counsel, the claims addressed herein will be dismissed from this action.

IT IS SO ORDERED.  Dated this 24th day of February,  2022.

    s/ John W. Broomes
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE