IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KURT CHADWELL, *Individually and as a Personal Representative of the Estate of Decedent Earl Chadwell* ) ) ) ) Plaintiff, ) ) v. ) ) UNITED STATES OF AMERICA, ) ) Defendant. ) ) | Case No.: 6:20-1372-JWB-KGG |

**MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART SECOND AMENDED MOTION FOR LEAVE TO AMEND COMPLAINT**

Now before the Court is Plaintiff's "Second Amended Motion for Leave to Amend Complaint" (Doc. 47). Defendant opposes the motion. The Court finds that Plaintiff may represent the estate *pro se* as the sole beneficiary and administrator of the estate. Further, the Court finds that Plaintiff may amend to include his proposed medical malpractice claims. However, amending to include Plaintiff's claims for negligence in the use of unreasonable force and negligent infliction of emotional distress would be futile. Having reviewed the submissions of the parties, the Court **GRANTS in part** and **DENIES in part** Plaintiff's motion as set forth below.

**I.    Background**

The facts set forth herein are taken from Plaintiff's proposed amended complaint. Plaintiff is proceeding *pro se*, representing himself individually and Decedent's estate as its administrator. Plaintiff brings actions for medical malpractice, negligence in the use of

1

unreasonable force, and negligent infliction of emotional distress. These actions arise under the Federal Tort Claims Act and Kansas law.

Decedent Earl Chadwell ("Decedent") was living in the Transitional Living Center ("TLC") of the Veterans Affairs Medical Center ("VAMC"). (Doc. 47-1, at 1.) The TLC is essentially a nursing home within the VAMC. (*Id*. at 7.) On February 11, 2014, Decedent fell inside his room at the TLC. (*Id.*) Decedent was a known fall risk among the nursing staff. (*Id.* at 7.) Further, Decedent's wheelchair was equipped with a pressure sensitive "chair alarm" prior to his fall. (*Id.* at 8.) This chair alarm would sound whenever Decedent attempted to rise from his wheelchair and was "quite loud when activated." (*Id.*)

On the day of the fall, Decedent was able to walk with assistance to dinner. (*Id.* at 8.) After dinner, Decedent was returned to his room via his wheelchair by a VAMC employee. He was later found on the floor inside of his bathroom. (*Id.* at 9.) Plaintiff alleges that Decedent fell either because VAMC employees failed to properly activate the wheelchair alarm when they returned Decedent to his wheelchair after dinner, VAMC employees failed to ensure that the alarm was in proper working order, or VAMC employees failed to timely respond to the alarm. (*Id.*) Plaintiff also alleges that the TLC had a staffing shortage on the night of the fall. (*Id.* at 10.) The fall broke Decedent's hip, which necessitated a hip replacement surgery. (*Id.* at 9.)

Plaintiff also claims that on or about April 17th, 2014, or April 18th, 2014, a VAMC officer used physical force against him which caused his wrist or arm to bleed and bruise. (*Id.*, at 25.) While Plaintiff does not provide any further factual allegations to

2

explain this confrontation, a letter attached to the Standard Form-95 ("SF-95"), (Doc. 47-2), from the VAMC Medical Center Director states that Plaintiff's visitation privileges were suspended based upon disruptive behavior. (Doc. 47-2, at 17.) This disruptive behavior led VAMC police to escort Plaintiff off the VAMC campus. (*Id.*)

On February 10, 2016, Plaintiff submitted an administrative claim, via a SF-95 to the Department of Veterans Affairs. (Doc. 47-1, at 6.) The SF-95 is partially redacted because it contains "private, personal information." (*Id.*) This SF-95 provides more detail on the alleged injuries Decedent suffered at the VAMC than what was included in the complaint as mentioned above. (Doc. 47-2 at 6-10.) Plaintiff has incorporated the factual allegations contained in the SF-95 into the proposed amended complaint. (Doc. 47-1, at 6.)

Plaintiff's original complaint included claims for medical malpractice, negligent supervision, and outrage. (Doc. 1.) This original complaint was partially dismissed without prejudice for failure to state a claim. (Doc. 33.) All claims brought on behalf of Decedent's estate were dismissed because Plaintiff could not appear *pro se* on behalf of others, and Plaintiff's brother ("Mark") was also a beneficiary of Decedent's estate. When a claim is brought on behalf of an estate, that claim is brought on behalf of all of its heirs. Therefore, Plaintiff could not represent the estate while appearing *pro se*, as representing the estate would require him to represent Mark. Plaintiff's claims for negligent supervision and outrage were dismissed for failure to allege sufficient facts to support his legal conclusions.

Following the dismissal, Mark filed a disclaimer of interest in Decedent's Estate. Plaintiff then obtained an order from the state probate court which declared Mark's disclaimer as timely, valid, and effective. (Doc. 47-5, at 1.) Further, the probate court found that Plaintiff is the sole beneficiary and court-appointed administrator of Decedent's estate. (Doc. 47-5, at 6-7.)

Plaintiff now seeks to amend his complaint. On behalf of himself, Plaintiff brings a wrongful death claim under the Kansas Wrongful Death Act (K.S.A. § 60-1801-06) and claims for negligence in the use of unreasonable force and negligent infliction of emotional distress. As the administrator of Decedent's estate, Plaintiff then brings claims under the Kansas Survival Act (K.S.A. § 60-1801-03) for medical malpractice and negligent infliction of emotional distress.

Plaintiff filed this Second Amended Motion for Leave to Amend on July 7th, 2022. Defendant then filed its response (Doc. 49), arguing that the proposed amendments would be futile. Following Defendant's response to Plaintiff's first Amended Motion for Leave to Amend, Plaintiff chose to file this second amended motion instead of replying to Defendant's response. Plaintiff has had ample opportunity to address Defendant's arguments in the numerous previous pleadings. Therefore, the Court has precluded Plaintiff from filing a reply to Defendant's response and considers the briefing on this motion complete.

**II.      Standard**

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's consent or the court's leave." Fed. R. Civ. P.

15(a)(2). The Rule further provides that the court should freely give leave when justice so requires. (*Id.*) The grant of leave to amend the pleadings is within the discretion of the trial court and should be liberally construed. **Minter v. Prime Equipment Co.**, 451 F.3d 1196, 1204 (10th Cir. 2006).

Typically, leave to amend a pleading should be freely given unless there is undue delay, a bad faith motive, or undue prejudice. (*Id.*) (citing **Foman v. Davis**, 731 U.S. 178, 182 (1962)). A court is also justified in denying a motion to amend as futile if the proposed amendment could not withstand a motion to dismiss or otherwise fails to state a claim. **Ketchum v. Cruz**, 961 F.2d 916, 920 (10th Cir. 1992). Therefore, the proposed pleading is analyzed using the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Couser v. Somers*, No. 18-1221-JWB-GEB, 2020 WL 6742790, at *8 (D. Kan. Nov. 17, 2020), *report and recommendation adopted in part sub nom. Est. of Holmes by & through Couser v. Somers*, No. 18-1221-JWB, 2021 WL 236080 (D. Kan. Jan. 25, 2021). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" **Williamson v. United Parcel Service, Inc.**, No. 19-cv-2506-KHV-TJJ, 2020 WL 1638063, at *2 (D. Kan. Apr. 2, 2020) (citation omitted). Additionally, the opposing party bears the burden of showing how the proposed amendments are futile. **Layne Christenson Co. v. Bro-Tech Corp.**, No. 9-cv-2381-JWL-GLR, 2011 WL 3847076, at *5 (D. Kan. Aug. 29, 2011).

### III.   Analysis

#### A.  Claims on Behalf of the Estate

When granting Defendant's partial motion to dismiss, the district court found that Plaintiff could not bring claims on behalf of Decedent's estate while appearing *pro se* because the estate held multiple heirs—the Plaintiff and his brother. When bringing a claim on behalf of an estate, that claim is brought on behalf of all its heirs. ***Draughon v. United States***, 103 F. Supp. 3d 1266, 1284 (D. Kan. 2015) (citing ***Jones v. Corr. Med. Serv., Inc.***, 401 F.3d 950, 951-52 (8th Cir. 2005)). Therefore, Plaintiff cannot proceed *pro se* when there are other beneficiaries of the estate, because the right to appear *pro se* only applies to the "appearance for one's self." (*Id.*) However, Mark has executed a disclaimer of interest in Decedent's estate. (Doc. 47-1, at 3.)

Defendant poses that Mark's disclaimer of interest fails to cure Plaintiff's inability to represent the estate *pro se*. (Doc. 49, at 5.) This notion is incorrect. Not only has Mark executed a disclaimer, but Plaintiff has also been named the sole beneficiary and administrator of Decedent's estate by a probate court order. (Doc. 47-5, at 6-7). Under Kansas law, a survival action must be brought by the personal representative or administrator of the decedent on behalf of the estate. ***Howe v. Mohl***, 214 P.2d 298, 301 (Kan. 1950). Additionally, the administrator of the estate may bring the survival claim *pro se* when they are the sole beneficiary. ***Draughon***, 103 F. Supp. 3d at 1284; ***Guest v. Hansen***, 603 F.3d 15, 21 (2nd Cir. 2010) ("We hold that the administrator and sole beneficiary of an estate with no creditors may appear pro se on behalf of the estate"). As

6

the administrator and sole beneficiary, Plaintiff may bring the survival claims while proceeding *pro se*.

Defendant first argues against Plaintiff's ability to represent the estate by stating that it is unclear whether Mark's disclaimer of interest was timely under K.S.A. § 59-2292(a) because Plaintiff failed to articulate how the disclaimer is timely. (*Id.*) However, the Defendant bears the burden of proving that an amended complaint is futile. Defendant must demonstrate how the disclaimer of interest was untimely, not simply speculate that it might be. Following Defendant's reasoning would require the burden to be shifted onto the Plaintiff.

Defendant next argues that, even if Mark's disclaimer of interest is valid and timely, his disclaimer does not rectify Plaintiff's inability to represent the estate and that the estate still holds multiple heirs. To support this argument, Defendant cites **Matter of Estate of Estes**, 718 P.2d 298, 301-02 (Kan. 1986) which states that "a disclaimer is a renunciation of a property right, not a change of status or relationship." However, the probate court's order has not only named Plaintiff as the sole beneficiary to the estate but has also assigned and distributed the survival action to Plaintiff exclusively. (Doc. 47-5, at 6-7.) Additionally, an administrator who is the sole beneficiary of the estate may proceed *pro se*, as stated above. Given the probate court's ruling and Plaintiff's status as the administrator and sole beneficiary, Defendant's argument fails.

In the alternative, Defendant argues that Plaintiff's status as the sole heir precludes him from bringing claims on behalf of the estate, relying on **White v. City of Topeka**, 489 F. Supp. 3d 1209, 1221 (D. Kan. 2020) ("[A] survival action must be maintained by the

7

personal representative of the decedent, and cannot be brought by the decedent's heirs") and *Estate of Smart v. City of Wichita*, No. 14-2111-EFM, 2018 WL 534335, at *2 (D. Kan. Jan. 24, 2018) ("Under Kansas law, survival claims must be maintained by an administrator of the decedent's estate, and cannot be brought by the decedent's heirs."). Defendants wish to place emphasis on the later part of the two quoted statements. However, *White* and *Estate of Smart* share a different context from this case.

In this case, the sole beneficiary of the estate, Plaintiff, is also the administrator of the estate. In *White* and *Estate of Smart*, the beneficiaries and the administrators of the estates are separate entities. *White* and *Estate of Smart* preclude beneficiaries from bringing survival claims *as beneficiaries*, but, here, Plaintiff is bringing the survival claim *pro se* as the appointed administrator of the estate, irrespective of his status as a beneficiary. *White and Estate of Smart* only prevent non-administrator beneficiaries from bringing a survival claim on behalf the estate. Holding otherwise would bar any estate that has an administrator who is also a beneficiary from bringing survival claims. As such, Plaintiff may bring claims on behalf of the estate while proceeding *pro se*.

### B. Count I: Medical Malpractice Claims

Plaintiff has brought medical malpractice claims on behalf of himself and as the administrator of Decedent's estate. (Doc 47-1, at 37.) He brings his own claims under the Kansas Wrongful Death Act (K.S.A. § 60-1901-06) and the estate's claims under the Kansas Survival Act (K.S.A. § 60-1801-03). (*Id.*) Defendant does not contest Plaintiff's right to bring a wrongful death claim. Additionally, Defendant makes no further arguments against the estate's medical malpractice claims beyond Plaintiff's ability to

represent the estate. As stated above, Plaintiff may bring the estate's survival claims as its administrator and sole beneficiary. Therefore, this portion of Plaintiff's motion is **GRANTED.**

### C. Count II: Negligence in the Use of Unreasonable Force Claims

Plaintiff brings a claim on behalf of himself for negligence in the use of unreasonable force. (Doc. 47-1, at 49.) He alleges that VAMC officers caused his wrist or arm to bleed and bruise. (*Id.*, at 50.) This occurred during an altercation that led to Plaintiff being escorted from the VAMC on April 17th or 18th, 2014. (Doc. 47-2, at 17.) He further alleges that this altercation caused mental pain, injury, nervousness, indignity, fright, humiliation, and embarrassment. (Doc. 47-1, at 51.)

Defendant poses that this new claim would be futile for several reasons. The Defendant first argues that this claim lacks factual allegations on what the officer actually did to Plaintiff. (Doc. 47, at 6.) This argument fails because, while the complaint may not go into extensive detail on the altercation, the claims do allege enough information to be plausible. Plaintiff describes that there was an interaction between him and a VAMC officer, the officer owed him a duty, the officer breached that duty, the date the interaction occurred, and the injury that resulted from that interaction. (Doc. 47-1, at 50.) Further, the letter attached to the SF-95 details that this interaction involved an officer escorting Plaintiff out of the building. (Doc. 47-2, at 17.) Considering all of these details, Plaintiff alleges enough facts to bring a plausible claim.

Defendant next argues that this new claim is futile because Plaintiff fails to show how the VAMC officer breached a duty owed to Plaintiff. (Doc. 49, at 6.) A police

9

officer owes a special duty to an individual when that officer performs an affirmative act that causes injury. ***Clark v. Thomas***, 505 F. Supp. 2d 884, 890 (10th Cir. 2007) (citing ***Dauffenbach v. City of Wichita***, 667 P.2d 380, 385 (Kan. 1983)). Plaintiff alleges he was owed a duty when the VAMC officer performed the affirmative act of escorting him out of the building. He then further alleges that the VAMC officer breached that duty by using unreasonable force while escorting Plaintiff from the building. (Doc. 47-1, at 50.)

The Defendant then argues that even if the officer owed a special duty to Plaintiff, the officer was reasonable in their use of force. (Doc. 49 at 8.) Granted, an officer is justified in using reasonable force, and has the discretion to determine the degree of force that is necessary under the circumstances. ***Clark v. Thomas***, 505 F. Supp. 2d 884, 890 (10th Cir. 2007) (citing ***Dauffenbach***, 667 P.2d at 385). However, the reasonableness of the force used by an officer is a question for the trier of fact. (*Id.*) As such, Plaintiff has properly alleged a breach of duty.

The Defendant next argues that the negligence claim is a repackaging of Plaintiff's intentional tort claims from the original complaint and the SF-95. (Doc. 49, at 9.) Since § 2680(h) of the Federal Tort Claims Act bars any claim that arises out of an assault or battery committed by a law enforcement officer, the Defendant argues that this claim should be dismissed as futile. (*Id.*) A plaintiff cannot avoid the restrictions in § 2680(h) by framing their complaint as a negligence claim. ***United States v. Shearer***, 473 U.S. 52, 53 (1985). This is because "2680(h) does not merely bar claims for assault or battery . . . it excludes any claim arising out of assault or battery." (*Id.*) While Plaintiff does not use the word battery in his amended complaint, his brief description of the event

10

details a battery. (*See* Doc. 47-1, at 50.) Additionally, when describing the event in the SF-95, the Plaintiff explicitly calls the incident a battery. (Doc. 47-2, at 10.)

While Plaintiff may state that he is not alleging a battery in his proposed, amended complaint, this new negligence claim is simply a repurposing of that original battery claim from the SF-95. A mere allegation of negligence does not turn an intentional tort into negligent conduct. ***Benavidez v. United States***, 177 F.3d 927, 931 (10th Cir. 1999). Plaintiff's negligence claim is arising out of the alleged battery from the VAMC officer and is barred by § 2680(h) of the Federal Tort Claims Act. Therefore, this portion of Plaintiff's motion is **DENIED**.

### D.  Count III: Negligent Infliction of Emotional Distress

Plaintiff also brings new claims for negligent infliction of emotional distress ("NIED") on behalf of himself and the estate. (Doc. 47-1, at 51.) Starting with the claims brought on behalf of himself, Plaintiff alleges that Defendant's failure to protect Plaintiff from reprisal is in violation of 38 C.F.R. § 17.33. (*Id.*) This failure allegedly caused Plaintiff's extreme emotional distress. (*Id.*, at 53.) Furthermore, he alleges that the conduct of one or more of VAMC's employees was extreme and outrageous. (*Id.*) In order to succeed on an NIED claim, a plaintiff must demonstrate that the extreme and outrageous conduct resulted in direct and proximate physical injury in addition to any emotional discomforts. ***Price v. City of Wichita***, No. 12-1432-CM, 2013 WL 6081103, at *5 (D. Kan. 2013) (citing ***Reynolds v. Highland Manor, Inc.***, 953 P.3d 11, 13 (Kan. Ct. App. 1998)).

11

While Plaintiff does allege that he suffered several injuries due to Defendant's conduct, such as humiliation, emotional distress, and loss of sleep, he does not allege that these injuries resulted in direct or proximate physical injury. Furthermore, "Kansas courts have refused to entertain claims for NIED where the physical effects resulting from the emotional distress manifested in headaches, nausea, insomnia, and other general physical and emotional discomforts." *Lee v. Kan. State Univ.*, No. 12-cv-2638-JAR-DJW, 2013 WL 2476702, at *10 (D. Kan. June 7, 2013). Given this, Plaintiff has failed to plead a plausible claim for NIED.

Moving to the NIED claim brought on behalf of the estate, amending to include this claim would also be futile. As with Plaintiff's claim, the proposed amended complaint fails to point to any direct or proximate physical injury that caused Decedent's emotional distress. Plaintiff does point to a physical injury, Decedent's broken hip, but he fails to explain how this is direct or proximate to Decedent's distress. Rather, the proposed amended complaint points to the TLC's alleged inadequate medical care and the banning of Plaintiff from the VAMC as the cause of Decedent's emotional distress. As such, the estate lacks a plausible claim for NIED and amending to include either the Plaintiff's or the estate's claim would be futile. Therefore, this portion of Plaintiff's motion is **DENIED**.

## IV.   Conclusion

The Court finds that Plaintiff may bring the estate's survival claims as its administrator and sole beneficiary. Plaintiff may amend to include both his own and the estate's medical malpractice claims (Count I). Therefore, this portion of Plaintiff's

12

motion is **GRANTED.** However, the Court also finds that Defendants have established the futility of Plaintiff's proposed unreasonable force claim (Count II) and proposed NIED claims (Count III) brought on behalf of himself and the estate. As such, these portions of Plaintiff's motion are **DENIED**.

**IT IS THEREFORE ORDERED** that Plaintiff's Second Amended Motion for Leave to Amend Complaint (Doc. 47) is **GRANTED in part** and **DENIED in part** as set forth herein.

**IT IS FURTHER ORDERED** that Plaintiff shall revise his Amended Complaint accordingly and file it **within 14 days after receiving this Order.**

    **IT IS SO ORDERED**

Dated at Wichita, Kansas, on this 29th day of July 2022.

S/ KENNETH G. GALE
KENNETH G. GALE
United States Magistrate Judge
