UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KURT CHADWELL, individually and as personal
representative of the estate of deceased E.E.
Chadwell,

        Plaintiff,

        v.

THE UNITED STATES OF AMERICA,

        Defendant.

Case No. 20-1372-JWB-BGS

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant United States' (hereinafter "Defendant"

or "United States") Motion for a Protective Order Regarding Plaintiff's Rule 30(b)(6) Deposition

Topics and Plaintiff's Amended Motion to Strike Defendant's Three Retained Expert Witnesses for

Non-Compliance with Fed. R. Civ. P. 26(a)(2)(B). [1] *See* Doc. 298, 308. For the reasons stated

herein, the Court **GRANTS in part and DENIES in part** Defendant's motion for a protective

order and **DENIES** Plaintiff's amended motion to strike Defendant's retained expert witnesses.

**I.**     **Procedural History**

This is a medical malpractice negligence action against the United States under the Federal

Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, in which plaintiff proceeds pro se. Following a stroke

in the second half of 2013, Earl Chadwell ("decedent") sought treatment at the VA Medical Center

---

[1] Plaintiff filed two motions. A motion to strike and an "amended" motion to strike. *See* Docs. 302, 308.
The Court has reviewed both motions. Plaintiff's "amended motion" adds exhibits and raises some
additional argument. While the "amended motion" is not procedurally proper, the Court will nonetheless
consider the motion on the merits. As such, the Court will rule on Plaintiff's "amended motion" and finds
the original motion, Doc. 302, **MOOT**.

("VAMC") in Wichita, Kansas.[2]  Plaintiff was admitted to the VAMC's Transitional Living Center, which Plaintiff describes as a nursing home within the VAMC.  Plaintiff resided there until his death on August 17, 2024.  Doc. 54, at 8.  The decedent was survived by two children, Mark Chadwell and Plaintiff.  Plaintiff is the sole administrator of the decedent's estate; he is also the sole heir and beneficiary of the estate after Mark disclaimed his interest in the estate.  Docs. 74 at 3; 107 at 2.  This action was filed on December 31, 2020, and arises out of Earl's alleged wrongful death due to medical negligence while in the care of the Defendant.  Plaintiff's amended complaint pleads both a wrongful death claim and a survival action.  *See* Doc. 54.

Discovery in this case has been onerous and has required Court intervention on numerous occasions.  The Court has recounted the lengthy and contentious history of the case in its prior orders and will not repeat it here.  *See* Doc. 253.

As it pertains to the pending motions in this matter, on January 8, 2024, Plaintiff served a Rule 30(b)(6) deposition notice on Defendant.  Doc. 244.  Defendant requested a pre-motion discovery conference with the Court to address several discovery disputes, including objections to the Rule 30(b)(6) notice.  A hearing was held on January 19, 2024, and lasted for nearly three hours.  Doc. 250.  One of the issues the Court considered during that hearing pertained to Plaintiff's Rule 30(b)(6) deposition notice.  The deposition notice was 79 pages long and contained 58 topics and 463 subtopics.  Defendant contended the deposition notice was facially overbroad and not proportional to the needs of the case.  Plaintiff argued that the lengthy number of deposition topics was necessary to obtain all the information he needs.  After considering the parties' arguments, the Court quashed Plaintiff's Rule 30(b)(6) deposition notice, Doc. 244, as prepared.  The Court found that the notice was facially overbroad and included topics not relevant or proportional to the needs

---

[2] This is also referred to as the **Robert J. Dole Veterans Affairs Medical Center** or the **Robert J. Dole Veterans Administration Medical Center**.  *See generally* Docs. 54, 258.

of the case. *See* Doc. 253. Plaintiff was ordered to revise his deposition notice and was limited to 25 topics with no subparts. *Id.*

On January 25, 2024, Plaintiff served an amended notice of the Rule 30(b)(6) deposition on Defendant, which complied with the Court's prior order and contained 23 topics with no subparts.[3] Doc. 258-2. Thereafter, the Court was notified that Defendant objected to many of the topics in Plaintiff's amended notice and that the parties had been unable to resolve these issues.

The Court took up Defendant's objections to the amended notice at the February 2, 2024, discovery hearing. Defendant asserted that the amended Rule 30(b)(6) notice was objectionable on its face and asked the Court to strike the notice in its entirety. The Court denied the Defendant's request finding the amended notice was not objectionable on its face. The Court further found that Defendant had not fully complied with the Court's order to meaningfully confer with Plaintiff regarding each topic. *See* Doc. 280. To facilitate resolution of all remaining issues concerning the Rule 30(b)(6) deposition, the Court ordered the Defendant to identify all objections it had to the amended deposition notice and to then confer with Plaintiff. The Court ordered the parties to inform the Court of any remaining issues related to the deposition notice by February 20, 2024. Doc. 280.

Also in this hearing, the Court briefly addressed objections Plaintiff had concerning Defendant's retained expert disclosures which were served on January 5, 2024. *See* Doc. 243. The parties advised the Court that they were working toward resolving the objections at issue. Consequently, the Court did not address the merits of those objections and directed the parties to

---

[3] One additional topic was added during the hearing. The final notice thus contained 24 topics with no subparts.

further meet and confer.  The parties were directed to email the Court if they could not resolve the issues.

Both parties emailed the Court on February 20, 2024, and informed the Court that no agreement was reached regarding Plaintiff's Rule 30(b)(6) deposition notice or Plaintiff's objections to Defendant's expert witness disclosures[4].  The Court informed the parties that the pre-motion requirements were waived, and that those issues may proceed to briefing.  Pretrial deadlines were also suspended pending resolution of the discovery issues.  Doc. 290.  Both parties timely filed their motions on February 26, 2024.  *See* Docs. 298, 302.  Each party filed a responsive memorandum on March 4, 2024.  *See* Docs. 310, 311.  No replies were permitted.

## II.     Plaintiff's Rule 30(b)(6) Deposition Notice

### a.  Legal Standard

Defendant moves for a protective order to narrow or eliminate 20 of the 24 topics in the Rule 30(b)(6) deposition notice.  Feb. R. Civ. P. 26(b) governs the scope of discovery and states that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

As such, for the information to be discoverable, the requested information must be nonprivileged, relevant, and proportional to the needs of the case.  *Holick v. Burkhart*, No. 16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).  Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter

---

[4] The facts specific to Plaintiff's motion to strike Defendant's retained experts is set forth in more detail below.

that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*,

437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 L. Ed. 2d 253 (1978); *See also Smith v. MCI Telecomm.*

*Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991); *Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227, 2016

WL 3745680, at *2 (D. Kan. July 13, 2016) (applying *Oppenheimer* after the 2015 amendment).

A Rule 30(b)(6) deposition allows an opposing party to question a corporate defendant by

noticing the deposition of the corporation's representative as to certain designated topics.  Pursuant

to the rule, the notice

> . . . must describe with reasonable particularity the matters for examination.  The
> named organization must designate one or more officers, directors, or managing
> agents, or designate other persons who consent to testify on its behalf; and it may set
> out the matters on which each person designated will testify.  Before or promptly after
> the notice or subpoena is served, the serving party and the organization must confer
> in good faith about the matters for examination.  A subpoena must advise a nonparty
> organization of its duty to confer with the serving party and to designate each person
> who will testify.  The persons designated must testify about information known or
> reasonably available to the organization.

Fed. R. Civ. P. 30(b)(6).

"In a Rule 30(b)(6) deposition, there is no distinction between the corporate representative

and the corporation." *Sprint Communications Co. L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 527 (D.

Kan. 2006).  As such, "to allow [Rule 30(b)(6)] to effectively function, the requesting party must take

care to designate, with painstaking specificity, the particular subject areas that are intended to be

questioned, and that are relevant to the issues in dispute." *Id.*, at 528.  Thereafter, the responding

party is required to "make a conscientious good-faith endeavor to designate the persons having

knowledge of the matters sought by [the deposing party] and to prepare those persons in order that

they can answer fully, completely, unevasively, the questions posed by [the deposing party] as to the

relevant subject matters." *Id.* (*citing Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638

(D.Minn.2000) (quotations omitted)).  "Because Rule 30(b)(6) "explicitly requires a corporation to

designate persons to testify on its behalf as to all matters reasonably available to it," our court "has

held that the Rule 'requires persons to review all matters known or reasonably available to [the corporation] in preparation for the 30(b)(6) deposition.'" *Orchestrate HR, Inc. v. Blue Cross & Blue Shield of Kansas, Inc.*, No. 19-4007-DDC, 2023 WL 2269780, at *1 (D. Kan. Feb. 28, 2023).

Protective orders are governed by Fed. R. Civ. P. 26(c), which gives the court, "broad discretion to utilize such a protective order to specifically define and/or narrow the disclosure or discovery, including the terms, timing, and method of discovery'." *Orchestrate HR, Inc.*, 2023 WL 2269780, at *1. The Rule provides, in relevant part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending.... The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> * * *
>
> (A) forbidding the disclosure or discovery;
>
> (B) specifying terms, including time and place, for the disclosure or discovery;
>
> * * *
>
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; ....

Fed. R. Civ. P. 26(c)(1).

"The 'good cause' standard of Rule 26(c) is highly flexible, having been designed to accommodate all relevant interests as they arise." *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008) (internal quotation marks omitted).

**b. Analysis**

Defendant's motion for a protective order seeks to eliminate or narrow 20 of Plaintiff's 24 topics for the deposition. In addition to its objections to the topics, it also objects to Plaintiff's

definition of the word "identify."  The Court will first resolve the dispute involving the definitions and then will turn to the topics at issue.  Additionally, because the Defendant filed a motion for a protective order, the Court will not rule on every single "objection" and instead will decide whether a protective order is warranted pursuant to Fed. R. Civ. P. 26(c) and 30(d).  *Orchestrate HR, Inc.*, 2023 WL 2269780, at *2.

### Definitions 16-20

To begin, Plaintiff's Rule 30(b)(6) deposition notice includes a "definition" section where Plaintiff defines the word "identify" which is used in many of the deposition topics.  Plaintiff provided five definitions of the word "identify" depending on whether it is used in reference to an individual, corporation or business entity, a document, written communication, or oral communication.  He included the following definition in his deposition notice for an individual:

> 16.    As used herein, the terms **"identification"**, **"identify"**, or **"identity"**, when used in reference to a natural individual, require you to state his or her:
>
> > (a) current full name;
> > (b) previous name(s) used subsequent to October 29, 2013;
> > (c) last known residential address;
> > (d) current personal email address;
> > (e) current personal cell phone number;
> > (f) current residential phone number;
> > (g) current work or business address;
> > (h) current work or business phone number;
> > (i) current work or business email address; and
> > (j) whether such individual is represented by counsel and, if so, the contact information for such counsel.
>
> And if the natural individual was your employee at any time between October 30, 2013, and the present, then you are also required to state his or her job title and job description for each job that he or she occupied for sixty work days or more (in the aggregate) as your employee subsequent to October 29, 2013.

Doc. 258-2, at 5-6.

Plaintiff's definition No. 17 states if the word "identify" is used in reference to a corporation, the designee must state: the "(a) full name and any names under which it does business;

(b) the address of its principal place of business; and (c) the addresses of all of its offices." *Id.*, at 6. Definition No. 18 states if the term is used in reference to a document, the designee must state: (a) the number of pages and the nature of the document; (b) its title; (c) its date and, if it bears no date, the date it was prepared; (d) the name or names of its authors and recipients; (e) whether it exists in paper form, as electronically stored information, or both; and (f) its present location and the name(s) of its custodian or custodians. *Id.* When used in reference to a written communication, definition No. 19 states the Defendant must identify "the document or documents which refer to or evidence the communication." *Id.* at 6-7. Lastly, definition No. 20 provides that identification when used in reference to an oral communication requires the deponent "to identify the persons participating in the communication and to state the date, manner, place, duration, and substance of the communication." *Id.* at 7.

Defendant argues that the definitions provided by Plaintiff are inappropriate and would "require a witness to collect, memorize, and recount extremely detailed information on multiple subjects." Doc. 299, at 1. Plaintiff contends that there is no need for the designee to "memorize" information because they can bring documents or materials with them to assist with answering questions. Although not specifically stated, Defendant appears to be arguing that Plaintiff's definitions of "identify" place an undue burden on Defendant. The Court agrees.

Fed. R. Civ. P. 26(c) provides that the Court may enter a protective order to protect a party from an undue burden. Determining whether the topics or definitions in a Rule 30(b)(6) deposition notice is an undue burden is a case-specific inquiry that requires consideration of factors such as relevance, proportionality, and the breadth of the topic or definition at issue. *Cf. Raymond v. Spirit AeroSystems Holdings, Inc.*, No. 16-1282-JTM-GEB, 2017 WL 6524841, at *3 (D. Kan. Dec. 21, 2017). As previously stated, "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v.*

*Rhinehart*, 467 U.S. 20, 36, 104 S. Ct. 2199, 2209, 81 L. Ed. 2d 17 (1984).

In this case, the Court finds that Plaintiff's definition of identify in numbers 16, 17, 18, and 20, places an undue burden on Defendant. While it is relevant to ask a representative to identify relevant people, documents, communications, etc. testified about in response to a topic, the requested level of detail is unnecessary and out of proportion for a Rule 30(b)(6) deposition. Definition No. 19 will remain as stated in the notice; however, the other definitions of identify are narrowed as set forth below:

16. As used herein, the terms **"identification"**, **"identify"**, or **"identity"**, when used in reference to a natural individual, require you to state his or her:

(a) current full name;
(b) last known residential address;
(c) current personal phone number;
(d) whether or not the individual is a current employee; and
(e) whether such individual is represented by counsel and, if so, the contact information for such counsel.

And if the natural individual was your employee at any time between October 30, 2013, and August 31, 2014, then you are also required to state his or her job title and job description for each job that he or she occupied for sixty work days or more (in the aggregate) as your employee between the dates set forth herein.

17. As used herein, the terms "identification", "identify", or "identity", when used in reference to a corporation or business, require you to state its:

(a) full name and any names under which it does business; and
(b) the address of its principal place of business.

18. As used herein, the terms "identification", "identify", or "identity", when used in reference to a document, require you to state:

(a) the nature of the document (e.g., letter, email, VA Handbook, VHA Directive, VHA Manual, VISN 15 Network Memorandum, physician's order, or nurse's progress note, etc.);
(b) its title;
(c) its date and, if it bears no date, the date it was prepared;
(d) the name or names of its author;
(e) if the document was not previously produced in discovery, whether it exists in paper form, as electronically stored information, or both; and its present location.

(f) if the document was previously produced in discovery, in lieu of the foregoing requirements in (a)-(d), the deponent may provide Plaintiff's counsel with the bates number(s) of the document.

20. As used herein, the terms "identification", "identify", or "identity", when used in reference to an oral communication, require you to identify the persons participating in the communication, the date the communication occurred, and the substance of the communication.

The Court grants Defendant protection in part on definition numbers 16, 17, 18, and 20.

## Topic Nos. 1 and 5

In Topic Nos. 1 and 5, Plaintiff seeks testimony on various VA policies and procedures which were in effect between October 30, 2013, and August 17, 2014. Topic No. 1 generally relates to patient falls, fall prevention, the use of wheelchair alarms, and toileting assistance. Topic No. 5 generally relates to policies addressing dysphagia, aspiration, and aspiration pneumonia. Defendant objects to these topics on the sole basis that the topics are only relevant to the standard of care, which is for an expert to discuss, not a 30(b)(6) corporate representative.

The Court agrees that questions regarding the standard of care are typically questions for expert witnesses. *See Richard v. Sedgwick Cnty. Bd. of Comm'rs*, No. 09-1278-WEB, 2011 WL 5396096, at *2 (D. Kan. Nov. 8, 2011) (limiting deposition of fact witness to exclude questions concerning the standard of care applicable to another healthcare provider); *see also D.M. by & Through Morgan v. Wesley Med. Ctr. LLC*, No. 18-2158-KHV-KGG, 2019 WL 632369, at *5 (D. Kan. Feb. 14, 2019) ("[I]ssues relating to standard of care [are to] be addressed by the appropriately trained and educated medical experts and professionals"). It is unclear from Plaintiff's response whether Plaintiff intends to examine the corporate representative about the applicable standard of care or whether Plaintiff is merely seeking to identify and confirm what policies and procedures are at issue, so that he can effectively cross-examine witnesses at trial.

On their face, Topic Nos. 1 and 5 do not identify "standard of care" as a subject of

examination.  Likewise, the Court finds that examination of a corporate representative about the applicable standards of care would be inappropriate and should instead be addressed by experts. That said, Plaintiff is not precluded from inquiring of a corporate representative about what specific policies fall within the categories set forth in Topic Nos. 1 and 5, as well as any factual basis for representations in the various policies and procedures.  Such factual testimony – as opposed to standard of care testimony – is relevant and proportional to the needs of the case.  Defendant's request for protection is granted in part only as to standard of care expert testimony.

**Topic No. 9**

Plaintiff seeks to examine a Rule 30(b)(6) representative regarding five interdisciplinary care plans prepared for decedent, including details on subsequent modifications and whether "interventions" were omitted from the care plan.  Defendant contends that the topic is overbroad and should be narrowed because the "topic seeks testimony on every line in every care plan during the decedent's stay at the VAMC."  Doc. 299, at 3.  Plaintiff argues that the interdisciplinary care plans are relevant to the estate's claim for damages in the survival action because they may show changes in his mental and physical conditions following Defendant's alleged negligent acts.

The Court agrees that Topic No. 9 is relevant and proportional to the needs of the case. The interdisciplinary care plans are plans of care focused on a patient's condition, treatment goals, and methods for improving outcomes.  Further, as set forth in the definition of interdisciplinary care plan, this request is limited to five documents previously produced to Plaintiff.[5]  The care plan documents were generated by the Defendant while the decedent received treatment at the VA hospital, which is at issue in this case.  Furthermore, as stated by Plaintiff, the care plans may contain information related to decedent's mental and physical state following the alleged negligent acts,

---

[5] The definition for interdisciplinary care plan includes catch all language for other similar care plans if not previously produced by Defendant.

which may be relevant towards the estate's claim for damages, which includes a claim for conscious pain and suffering.  Likewise, it is sufficiently tailored and limited to the specific documents identified above and is not overbroad.  Defendant's request for protection as to Topic No. 9 is denied.

**Topic No. 12**

This topic seeks information related to the wheelchair alarm that was installed on or affixed to decedent's Invacare Tracer SX5 manual wheelchair.  He also seeks information regarding the care providers who gave directions or instructions that the wheelchair be outfitted with the alarm, the purpose of the alarm, dates/times of when the alarm was not activated, and reasons it was not activated between January 10, 2014, and February 12, 2014.

Defendant argues the topic is overbroad and seeks information not known or reasonably available to the organization.  Specifically, Defendant alleges that the request asks for a "month-long, day-by-day account of the status of an individual wheelchair alarm 10 years ago" and states that level of detail is not in the medical records.  Doc. 299, at 3.  Plaintiff disagrees and contends that the topic goes to the heart of Plaintiff's liability claims.

One of the issues in this case concerns the fact that decedent was a known fall risk and that his wheelchair was equipped with an alarm.  Plaintiff's First Amended Complaint further alleges that decedent fell after getting out of his wheelchair to go to the bathroom and no alarm sounded.  Doc. 54, at 10.  Accordingly, the Court finds that the topic is relevant and proportional to the needs of the case.  The Court further finds it is sufficiently narrow in scope.  Regarding Defendant's concerns that some of the information sought may not be available, Rule 30(b)(6) only requires that the designated persons testify as to matters "known or reasonably available to the organization." *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000) (citing Fed. R. Civ. P. 30(b)(6)).  Accordingly, Defendant is only required to make a good-faith effort to designate knowledgeable representatives

and to prepare them to fully answer questions in a non-evasive fashion, which the Court finds to be reasonable for this topic. *Raytheon Aircraft Co. v. United States*, No. CIVA 05-2328-JWL-DJW, 2007 WL 2668725, at *4 (D. Kan. Sept. 6, 2007). Defendant's request for protection as to Topic No. 12 is denied.

## Topic No. 13

Topic No. 13 seeks information from February 8, 2014, to February 14, 2014, concerning Defendant's understanding of the duties and responsibilities that each member of decedent's care team owed to decedent which related to the prevention of falls, the prevention of a fall-related injuries, charting, documentation, or recording of decedent's fall, the post-fall investigation, the post-fall documentation of facts, the institutional disclosures (or lack thereof) to decedent and his personal representatives of the underlying facts that caused or contributed to decedent's fall, and the identity of all documents, communications, and electronic medical records that memorialize or record principal or material facts related to decedent's February 11, 2014 fall.

Defendant argues that the topic is overbroad because it covers all duties and responsibilities of all employees in all positions who had any role over the course of a week in caring for or monitoring the decedent. Defendant further argues that standard of care issues are not appropriate for a Rule 30(b)(6) fact witness. Plaintiff does not agree that the topic is as broad as Defendant suggests. He contends that it seeks information on a few, select matters and it is appropriate because the VA has institutional knowledge of the duties and responsibilities of its employees.

Defendant cites a District of Kansas case which it contends ruled on a similar discovery dispute. *See generally Funk v. Pinnacle Health Facilities XXXII, LP*, No. 17-1099-JTM-KGG, 2019 WL 280950 (D. Kan. Jan. 22, 2019), *on reconsideration in part,* No. 17-1099-JTM-KGG, 2019 WL 858718 (D. Kan. Feb. 22, 2019). The issue in *Funk* related to the duties and identities of the CNAs at a healthcare facility and included certain subtopics such as the policies and procedures that applied to

CNAs, the training provided to them, the procedures for informing CNAs about changes and/or problems in the status of residents, and facility records and documentation of any event, item, or practice, related to the topic. *Id.* at *6-7. In *Funk*, the court found that the topic was overly broad because it encompassed every aspect of a CNA's job and went beyond the issues in the lawsuit. *Id.* This is distinguishable from the current situation because the topic in this matter is narrowed to the decedent's care team.

Defendant also objects that the topic encompasses standard of care issues that are not appropriate for a Rule 30(b)(6) fact witness. The Court agrees that questions regarding the standard of care are typically questions for expert witnesses. *See Richard v. Sedgwick Cnty. Bd. of Comm'rs*, No. 09-1278-WEB, 2011 WL 5396096, at *2 (D. Kan. Nov. 8, 2011) (limiting deposition of fact witness to exclude questions concerning the standard of care applicable to another healthcare provider); *see also D.M. by & Through Morgan v. Wesley Med. Ctr. LLC*, No. 18-2158-KHV-KGG, 2019 WL 632369, at *5 (D. Kan. Feb. 14, 2019) ("[I]ssues relating to standard of care [are to] be addressed by the appropriately trained and educated medical experts and professionals"). Plaintiff is not precluded from asking factual based questions about the duties and responsibilities of decedent's care team related to the decedent's fall and prevention of the same. Such factual testimony – as opposed to standard of care testimony – is relevant and proportional to the needs of the case.

As it pertains to asking questions about the institutional disclosure (or lack thereof) provided to decedent's family members, Plaintiff argues that the failure to make this disclosure is "evidence of a culpable mental state." Given the broad scope of discovery, the Court finds that this topic is relevant and proportional to the needs of the case. Defendant's request for protection as to Topic No. 13 is granted as it pertains to standard of care expert questions only.

**Topic No. 18**

Topic No. 18 asks the VA to identify and describe all policies, procedures, protocols, rules, federal regulations, guidelines, and standards covering resident or inpatient rights at a VA community living center, dysphagia, aspiration, aspiration prevention interventions, Transient Ischemic Attacks (TIAs) and Strokes, diagnosis and treatment of patient TIAs and strokes, and TIA and stroke prevention interventions.  The second part of the request extends the topics to numerous entities such as the Joint Commission, the Department of Veterans Affairs, the Veterans Health Administration, the VHA's National Center for Patient Safety, the VA Heartland Network, and the Dole VAMC.  Defendant objects that the topic is only relevant to the standard of care and that it is overbroad because it uses broad verbiage such as "all such policies and procedures."

Regarding Defendant's argument pertaining to the standard of care, the Court adopts its prior decision on Topic Nos. 1 and 5.  While Topic No. 18 does not specifically identify standard of care questions as a subject of inquiry, the Court finds that questions along these lines are inappropriate and require expert testimony.  Accordingly, Defendant's request for protection is granted in part as to standard of care expert testimony.

Regarding the remainder of the request, the Court finds that some narrowing is appropriate.  First, the Topic uses overbroad language because it goes beyond just policies and procedures.  In *Funk*, one of the topics in dispute concerned:

> Facility policies and procedures related to falls, fall prevention, and fall interventions, including the content, location, format, formulation, retention of all such written policies.  This topic includes all such policies and procedures that arise from federal or state regulations or statutes, as well as policies and procedures arising from standard practice, training, experience, or common law.

*See id.*, at *4 (citing Doc. 94, at 1).  The court agreed that the topic was overbroad and narrowed the topic.  The court held:

> The initial topic – facility procedures related to falls, fall prevention, and fall

> intervention – is self-explanatory. The Court agrees, however, that remainder of this topic unnecessarily complicates and confuses the subject. The Court notes that Plaintiffs' response to the motion does not address these objections. As such, Defendant's objections regarding the remainder of Topic 1 (after the first sentence) are **granted** and this portion of Topic 1 is stricken.

*Id.* The Court finds similarly here. The inquiry about "policies and procedures" is clear and appropriate for the deposition, but "protocols, rules, federal regulations, guidelines, or standards" is overly broad. The Court further narrows the topic as it pertains to the entities covered by the question and limits it consistent with topic nos. 1 and 5 – Dole VAMC, VA Heartland Network, Veterans Health Administration, and the VA.

Last, the Court strikes the following subjects as duplicative of Topics No. 1 and 5: dysphagia, aspiration, and aspiration prevention interventions. Defendant's request for protection as to Topic No. 18 is granted in part.

## Topic No. 19

In Topic No. 19, Plaintiff seeks Defendant's version of events and circumstances that led to decedent's fall and why "none of your employees was [sic] inside Earl's room or Earl's bathroom to supervise Earl and provide for his safety at the time he fell inside your premises." Defendant's sole objection is that the Topic should be limited because it is worded in the form of an accusation. Defendant cites to a second *Funk* opinion in support. *See generally Funk v. Pinnacle Health Facilities XXXII, LP*, No. 17-1099-JTM-KGG, 2018 WL 6042762 (D. Kan. Nov. 19, 2018). The disputed discovery request that Defendant points to is an interrogatory. That interrogatory, in relevant part, requested the defendant "to identify any individuals or entities that they contend 'caused [sic] or contributed to the subject tragedy (Definition 5) or to the resulting death of Dorothy Funk.'" *Funk*, 2018 WL 6042762, at *4 (citing Doc. 78, at 23). The court sustained the defendant's objection and held:

> Defendant also objects "to Plaintiff's use of the term 'tragedy' in that it is an intentional

16

and unnecessary attempt to gain improper sympathy and to improperly prejudice Defendant." The Court agrees. Any probative value of the use of the word "tragedy" (as, for instance, opposed to the more neutral term "subject incident") is outweighed by the highly prejudicial impact the use of this term would have with a jury in this case. The Court sustains this objection. Plaintiffs' motion is **DENIED** as to Interrogatory No. 3.

*Id.*

In *Funk*, defendant took issue with the fact that the interrogatory request was accusatory and could potentially cause prejudice to the defendant. *See id.* However, in this case, the Court does not share the same concerns and finds the situations to be distinguishable. First, the discovery in dispute in *Funk* was an interrogatory and not a Rule 30(b)(6) deposition topic. *Funk*, 2018 WL 6042762, at *4. Second, the same concerns regarding prejudice do not exist in this case. The case in *Funk* was set for jury trial and there was a concern that if the interrogatory was read to the jury, then it could have an unfair prejudicial impact. *See id.* Here, there is minimal prejudicial impact as this is set for a bench trial and has no chance of misleading or impacting a jury. Additionally, the Court does not agree the language used is "accusatory" in nature. Defendant is free to disagree with Plaintiff's theory or characterization, as well as explain why no employee was required to be in the room to supervise the decedent at the time he fell.

The Topic is relevant and proportional to the needs of the case. Defendant's request for protection as to Topic No. 19 is denied.

**Topic No. 20**

Topic No. 20 seeks to depose a designated witness regarding each instance Earl sat on a toilet for more than 3 minutes from the January 10, 2024, to February 12, 2024, including the date, shift, the amount of time he sat on the toilet, and whether he was attended or unattended while in the bathroom. Defendant objects that the request seeks a level of comprehensive detail that is not reflected in the medical records and that "most of the requested information goes far beyond the

February 11 fall and is only marginally relevant." Doc. 299, at 5. Plaintiff argues the decedent's medical condition prevented him from rising from his wheelchair, walking to the bathroom, and using the facilities without assistance. Further, Plaintiff argues that decedent's medical records contain information about toilet transfers and that the liability claim in the case raises questions about decedent being left unattended on the toilet prior to his February 11, 2024, fall.

Plaintiff's First Amended Complaint alleges that on February 11, 2014, decedent was found on the floor inside his personal bathroom and later underwent surgery for a broken hip, which serves as part of the basis for the medical negligence claim against the Defendant. Doc. 54, at 10. Consequently, the Court finds that Plaintiff is entitled to investigate whether the decedent was typically assisted when using the facilities; however, as written, the topic goes beyond what is relevant to the issues in the case and places an undue burden on Defendant, so the Court will narrow the request. Topic No. 20 is modified as follows:

> For the time period February 5, 2014, through February 12, 2014, inclusive, identify each instance or occasion that Earl sat on a toilet inside the Dole VA and identify any person that assisted with toilet transfer or toileting. As used in this particular topic, "identify each instance or occasion" means each occasion or instance decedent toileted and if he was attended, the identity of those individual(s).

The revised topic has removed the reference to "more than 3 minutes" because there is no indication or allegation that Defendant timed decedent when he used the facilities. The topic is further revised temporally to limit it to the week prior to decedent's fall and also removes some burdensome language. Defendant's request for protection as to Topic No. 20 is granted in part.

## Topic No. 26

Plaintiff seeks to examine a Rule 30(b)(6) representative regarding every instance Defendant "contends" decedent aspirated from October 30, 2013, to August 17, 2014. Defendant objects that the topic is overbroad in scope, and that Plaintiff's use of the word "contends" is confusing.

Defendant also objects that some of the information may not be known or reasonably available to the organization.

The Court finds that occasions where the decedent aspirated is relevant and proportional to the needs of the case; however, the Court finds the scope of the request is too broad. According to Plaintiff's First Amended Complaint, Plaintiff claims that decedent was at significant risk of aspirating foods and liquid due to a 2013 transient ischemic attack. Doc. 54 at 13. Plaintiff alleges that decedent became a heightened risk for medical complications and experienced medical setbacks after his February 11, 2024, fall. *See* Doc. 54, at 13-14. He further alleges that after decedent's February 14, 2014, surgery, decedent suffered from at least two instances of aspiration due to the negligence of VAMC employees. Doc. 54, at 14. Because the aspirations at issue in this case occurred after the February 14, 2014, surgery, the Court will narrow the time frame to February 11, 2014, to August 17, 2014.

Defendant argues that the use of the word "contends" is confusing because it does not bear the burden of proof regarding establishing every instance of aspiration. Defendant may not bear the burden of proof regarding aspirations, but Plaintiff is entitled to ask when Defendant believes it occurred. That said, the Court strikes the word "contends" from the first sentence and revises it as follows, "For the time period of February 14, 2014 to August 17, 2014, please identify each instance or occasion that Earl aspirated . . ."

Regarding Defendant's assertion that the topic seeks information not reasonably known to the organization, the Court reminds Defendant that Rule 30(b)(6) only requires the designated persons to testify to matters "known or reasonably available to the organization." *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000) (citing Fed. R. Civ. P. 30(b)(6)). Defendant also argues that it is unreasonable to require a witness to memorize details about every aspiration. A 30(b)(6) deponent must be prepared and knowledgeable, but it "is not designed to be a memory contest." *Schneider v.*

*CitiMortgage, Inc.*, No. 13-4094-SAC, 2017 WL 2831083, at *4 (D. Kan. June 29, 2017).  *See Doe I v.*

*Exxon Mobil Corp.*, 539 F. Supp. 3d 59, 74 (D.D.C. 2021) (30(b)(6) deponents may rely on notes).

Accordingly, the Court does not find protection on these grounds is warranted.

Defendant's request for protection as to Topic No. 26 is granted in part.

**Topic Nos. 30 and 31**

The parties address Topic Nos. 30 and 31 together.  Topic No. 30 seeks a broad range of

information.  Specifically, it seeks when and how VA Regional Counsel first learned of the

decedent's fall, the identity of such VA Counsel, the facts known by VA Regional Counsel prior to

the VA's receipt of the administrative claim filed by Plaintiff, the date(s) on which a litigation hold

notice was disseminated by a VA attorney as well as the identity of the attorney, the identity of each

employee that received a litigation hold notice, as well as the date that each person received it, the

ESI that was included in the litigation hold notices, the specific actions employees took to preserve

ESI, and the verbatim language within the litigation hold notice.

Topic No. 31 seeks information regarding when Defendant reasonably knew that future

litigation was likely regarding Earl's fall, the facts known that allowed Defendant to know that

litigation was likely, and for Defendant to identify and discuss all documents and communications

that memorialize, or record principal or material facts related to the foregoing.

Defendant moves for a protective order on this topic for three reasons: (1) the topics seek

privileged communications and information; (2) the topics seek "discovery on discovery"; and (3)

when litigation was or should have been reasonably anticipated is not an appropriate topic for a

30(b)(6) witness.

Plaintiff argues that the Veterans Health Administration ("VHA") Handbook requires the

Dole VA "organizational leaders" to "have conferred with [VA] Regional Counsel and have

determined what is to be communicated, by whom, and how."  Doc. 311, at 6.  According to

Plaintiff, institutional disclosures "must be initiated as soon as possible and generally within 72 hours[,]"  *Id.*  He surmises that Dole VA leaders "conferred with [VA] Regional Counsel" prior to February 16, 2014, regarding Earl's fall.  *Id.*  Plaintiff claims that the 30(b)(6) testimony will likely establish that the VA anticipated an FTCA claim or lawsuit stemming from decedent's fall.  He alleges that the testimony will likely further establish that VA attorneys encouraged facility management to not comply with the VHA Handbook.  Plaintiff alleges that as soon as the facility anticipated litigation it had a duty to institute litigation holds and had it done so, the "quarterly Minimum Data Set (MDS) assessments for Earl would not have been spoliated."  Doc. 311, at 7.

Plaintiff further alleges prior testimony of Dole VA employees suggests that additional documents are likely being withheld from Plaintiff at the direction of VA attorney Sarah Acosta.  He claims the documents are responsive to Plaintiff's written discovery.  He provides the example that non-party fact witness Regina Ketterman testified to the existence of a "root cause analysis" regarding Earl's fall.  Doc. 311, at 7.  He further claims that Ms. Ketterman testified that she was a member of the Dole VA "Fall Team" in 2013 and 2014, and that she maintained Microsoft Access and Excel spreadsheets in 2014, that should have included information regarding decedent's fall.

For the reasons set forth above, Plaintiff seeks to conduct "discovery on discovery,"  which is where one party requests discovery about how another party preserved, collected, and produced documents in discovery.  Plaintiff requests such information to determine at what point Defendant reasonably anticipated litigation for purposes of instituting a litigation hold[6].  Discovery on discovery may be appropriate if a party provides a factual basis for the request and narrowly tailors the

---

[6] Litigation hold notices are usually covered by the work product protection which attaches to "documents and tangible things that are prepared in anticipation of litigation or for trial."  Fed. R. Civ. P. 26(b)(3)(A); *Radiologix, Inc. v. Radiology & Nuclear Med., LLC*, No. 15-4927-DDC, 2018 WL 4851609, at *5 (D. Kan. Oct. 5, 2018).

requests to achieve the stated goals. *Gray v. Conner Indus., Inc.*, No. 20-1037-TC-GEB, 2021 WL 5298667, at *5 (D. Kan. Nov. 15, 2021). Here, Plaintiff asserts that had the hold been instituted timely, the aforementioned documents would not have been "spoliated." "Spoliation" is the intentional destruction or alteration of evidence." *Foster v. Lawrence Mem'l Hosp.*, 809 F. Supp. 831, 836 (D. Kan. 1992).

Plaintiff alleges in a conclusory fashion that MDS assessments were spoliated, but provides no factual basis or testimony in support of the same. Accordingly, "discovery on discovery" on this issue is not appropriate. As it pertains to the Access or Excel spreadsheets, Plaintiff explains that a witness testified that she prepared spreadsheets relating to decedent's fall, that this document was requested in discovery, and was not produced. The Court finds that Plaintiff has set forth a factual basis to warrant "discovery on discovery" on this issue, but that Plaintiff failed to "narrowly tailor the requests to achieve the stated goals." Accordingly, the Court will narrow Topic Nos. 30 and 31 to a limited inquiry concerning the Access and Excel spreadsheets and Defendant's preservation efforts pertaining to the same. Because the Court decides the dispute on this basis, it does not address the other arguments advanced by the parties.[7]

---

[7] Plaintiff suggests that the crime-fraud exception to the attorney-client privilege applies. The Court disagrees. "[A]ttorney-client privilege does not apply where the client consults an attorney to further a crime or fraud. The party claiming the exception applies 'must present prima facie evidence that the allegation ... has some foundation in fact." *Berroth v. Kansas Farm Bureau Mutual Ins. Co., Inc.*, 205 F.R.D. 586, 589 (D. Kan. 2002). Here, Plaintiff fails to make a prima facie showing that the crime-fraud exception applies. Plaintiff alleges that Sarah Acosta, a VA attorney, has been working behind the scenes as a "Wizard of Oz" figure. He says that she may be the person that instructed VA employees, including the former Dole VAMC Director Vazquez, not to comply with the VHA Handbook to include directing employees to not make mandatory institutional disclosures. He goes on to say that he believes she is involved in a conspiracy to obstruct justice and then suggests she may be guilty of a federal crime. The Court is disquieted that Plaintiff is lodging such serious accusations without much evidence. Plaintiff also seems to be assuming the worst possible motivations of Defendant and its employees. The Court is not inclined to entertain Plaintiff's accusations of criminal conduct on the part of VA employees which amount to speculative and conclusory assertions. Plaintiff also appears to demand that Sarah Acosta, or another VA attorney, serve as a designee. Doc. 311, at 8 ("Sarah Acosta, or some other VA attorney, needs to travel to Wichita, KS, and serve as the VA's 30(b)(6) designee to answer questions related to Topics 30 & 31"). While Defendant may choose to select her or another VA attorney as a designee, it is Defendant's responsibility to identify a responsive witness for the deposition. *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1146 (10th Cir. 2007). Plaintiff

**Topic No. 32**

Topic No. 32 asks the Defendant to disclose the date on which it received the SF-95 administrative claim signed and submitted by Kurt Chadwell on Feb. 10, 2016, and the date it received the request for reconsideration of the VA's initial denial of the administrative claim. Plaintiff argues such information is relevant because the Defendant has to date refused to stipulate that a statute of limitations defense cannot or will not be asserted in this FTCA lawsuit. Defendant objects that the topic is irrelevant because it has not asserted that defense in this lawsuit.

Fed. R. Civ. P. 8(c) states that a defendant must plead a statute of limitations defense in its answer to the complaint. Defendant's Answer to the First Amended Complaint does not set forth a statute of limitations defense in its answer, or anything related to it. *See* Doc. 60. Nor does Plaintiff cite to any supporting authority that would require Defendant to make a "judicial admission" along these lines. The statute of limitations is not a live issue in this case and therefore the Topic is irrelevant. Defendant's request for protection as to Topic No. 32 is granted.

**Topic No. 34**

Topic No. 34 alleges an error or incorrect note in an entry of decedent's care plans, specifically page 4 of 11 of the 02/04/2014 "90 Days CARE PLAN." Plaintiff explains that this document – dated February 4, 2014 - refers to a left hip fracture and subsequent surgery, when the injury did not occur until February 11, 2014. Plaintiff asserts Defendant allowed the original page "to disappear, become lost, or be destroyed" and seeks information regarding what employees did to preserve or safeguard the information. Defendant objects that the topic is impermissible "discovery on discovery," pertains to action taken in "reasonable anticipation" of litigation, and that the topic should be narrowed because it uses pejorative language.

---

does not have the authority to designate the witnesses. *See id.*

Certainly, inquiry about a medical record concerning decedent and created by Defendant is relevant and proportional to the needs of the case. The question here is whether Plaintiff is permitted to ask questions about the Defendant's preservation of that document. Where there are questions regarding documents being withheld and issues relating to the destruction or deletion of information, a designee may testify about an entity's discovery efforts. *See Martley v. City of Basehor, Kansas*, No. 19-2138-DDC-GEB, 2021 WL 4134307, at *3 (D. Kan. Sept. 10, 2021). Plaintiff has set forth a factual basis for seeking preservation information as it pertains to this document. Defendant's request for protection as to Topic No. 34 is denied.

**Topic Nos. 36 and 37**

Topic Nos. 36 and 37 are grouped together because both involve documents that were allegedly withheld, omitted, or lost. Topic No. 36 seeks information about why certain documents stored as ESI were withheld or omitted from the September 1, 2022, CD-ROM Defendant mailed to Plaintiff. He also seeks to ask about the individuals involved in such decisions as well as identification of the allegedly withheld documents. Topic No. 37 asks the Defendant to disclose and discuss the contents of decedent's activity sheets and to discuss why any activity sheets were lost or destroyed. It also seeks information as to why any activity sheets were not preserved in anticipation of litigation. Defendant objects that the topics seek "discovery on discovery" and are irrelevant.

Regarding Topic No. 36, the Court agrees that the topic is not relevant. How the VA staff compiled the CD-ROM that was mailed to Plaintiff occurred nearly 2 years ago and was never raised to the Court. Defendant's request for protection as to Topic No. 36 is granted.

However, the Court finds Topic No. 37 relevant because it involves the decedent's medical records and care, which is at issue in this case. Plaintiff may ask questions regarding the contents of the activity sheets, the reason for any missing activity sheets, and inquire about individuals involved in maintaining the activity sheets. However, Plaintiff has not set forth a factual basis to conduct

"discovery on discovery" on the activity sheets.  Plaintiff alleges that Ms. Ketterman testified as to the creation of activity sheets, but Plaintiff does not allege such documents were not produced, that documents are missing, or that the documents were otherwise destroyed or altered.  Defendant's request for protection as to Topic No. 37 is granted in part as it pertains to preservation testimony.

**Topic No. 39**

Topic No. 39, involves a speech pathology consult note that mentions a May 14, 2014, sign that was placed outside decedent's room, including its contents, attribute, function, purpose, and goal of the sign, and when any such sign was removed or destroyed.  He also seeks testimony regarding efforts to "preserve or safeguard" the sign after litigation was likely.

Defendant objects that the topic constitutes "discovery on discovery," uses pejorative language, and requests information not known or reasonably available.  Discovery on discovery regarding preservation efforts may be appropriate if a party provides a factual basis for the request and narrowly tailors the requests to achieve the stated goals.  *Gray v. Conner Indus., Inc.,* No. 20-1037-TC-GEB, 2021 WL 5298667, at *5 (D. Kan. Nov. 15, 2021).  *See Martley v. City of Basehor, Kansas*, No. 19-2138-DDC-GEB, 2021 WL 4134307, at *3 (D. Kan. Sept. 10, 2021).  Plaintiff argues that the signage would have prevented then-Director Francisco Vazquez from banning him from visiting decedent inside the Dole VAMC between April 18, 2014, and the date of decedent's death.  Plaintiff alleges mental and emotional distress in this lawsuit because of the Defendant's actions.  Doc. 54, at 25-32.  While an inquiry about the medical records and information known to Defendant about the sign is relevant and proportional to the needs of the case (and Defendant does not suggest otherwise), Plaintiff has not established a factual basis to examine a witness regarding preservation of the document.  Defendant's request for protection as to "discovery on discovery" is granted and the request is narrowed accordingly.

**Topic No. 40**

Plaintiff seeks to examine a Rule 30(b)(6) representative regarding Defendant's "desire to discharge" decedent from the Dole VAMC nursing home to another facility, information regarding efforts to secure a transfer, and the number of vacant beds that existed each day that Defendant was working to transfer decedent out of the VA. Defendant argues that the topic should be narrowed because the amount of vacant beds during the time the parties were discussing a transfer of care is irrelevant to the claims in this case. Defendant further argues the phrase "desire to discharge" is pejorative because whether to discharge the decedent to another facility was an ongoing discussion between Defendant and Plaintiff.

The Court agrees that the number of vacant beds during the period that the parties were discussing transferring decedent to another facility is irrelevant and grants Defendant protection to the same. The Court does not agree that the phrase "desire to discharge" is prejudicial or pejorative and denies Defendant's request for protection on this issue. Defendant's representatives are free to disagree with Plaintiff's theory or characterization, as well as explain why the Defendant did not "desire" to discharge decedent.

Defendant's request for protection as to Topic No. 40 is granted in part.

**Topic No. 41**

Topic No. 41 asks for details regarding staffing in the Dole VAMC nursing home and efforts made to fill vacant positions. Defendant objects that the topic is not relevant and is not timely pursued. Plaintiff asserts there was inadequate staffing that may have caused or contributed to decedent's fall. For instance, he alleges that inadequate staffing may explain why decedent was left unattended on the toilet when he fell on February 11, 2014, and that inadequate staffing may have caused further damages to decedent, including the failure to timely identify and respond to the ischemic attack decedent experienced. While the Defendant argues this allegation has not been

26

timely pursued, the Court notes that the First Amended Complaint includes allegations about the level of staffing, specifically that employees complained about the staffing shortage, that many patients' needs went unaddressed after supper, and that the level of care required by residents exceeded the staffing levels.  Doc. 54, at 11.  Accordingly, the Court finds that this topic is relevant and proportional to the case.  Defendant's request for protection as to Topic No. 41 is denied.

**Topic No. 54**

Deposition Topic No. 54 states:

The negative sequelae or clinical sequelae, including "noneconomic losses", associated with the fall that Earl Chadwell sustained inside the Dole VAMC nursing home on February 11, 2014.  This includes all of the negative sequelae or clinical sequelae between February 11, 2014, and August 17, 2014.

Doc. 258-2, at 19.  Defendant objects that the topic is inappropriate because it seeks to have Defendant prepare a witness to testify about Plaintiff's alleged noneconomic damages.  Defendant further objects that the topic cannot be adequately addressed by a Rule 30(b)(6) designated fact witness because the alleged "sequelae" – or whether the fall caused injuries or death – is a medical causation opinion addressed by the experts in the case.

Plaintiff argues that Defendant misconstrues the topic and states it does not seek testimony on a monetary value of non-economic damages, but instead seeks to examine a corporate representative about "documented facts" that decedent experienced "pain, suffering, disabilities, disfigurement, and accompanying mental anguish caused or contributed by the Feb. 11 fall."  The Court finds this topic similar to Topic No. 9; however, Topic No. 9 sought this information only as it pertained to interdisciplinary care plans.  This request goes beyond interdisciplinary care plans and seeks to inquire from documents prepared by VA employees that include statements about decedent's physical and mental state following the February 11 fall.  The Court agrees that questions regarding the foregoing are proportional and relevant to the needs of the case.

However, the Court understands Defendant's concern and agrees that the topic is broadly written and could include within its scope questions about the monetary value of Plaintiff's non-economic damages – which Plaintiff represents he does not intend to ask about - and the causation opinions expressed by the designated experts. Consequently, out of an abundance of caution, the Court grants Defendant protection in part as to questions about the monetary value of damages claimed by Plaintiff and medical causation questions. *See Funk*, 2019 WL 280950, at *9 (stating that it is more productive for experts to attest to the facts upon which they relied in support of their opinions). Consistent with Plaintiff's representation, the topic is limited to documents prepared by VA employees that address decedent's mental or physical state following the February 11, 2014, fall.

**Topic No. 58**

The last deposition topic in dispute is Topic No. 58. Plaintiff seeks a Rule 30(b)(6) fact witness to testify regarding every instance someone viewed Decedent's medical records in the VA's computer system, including the date, time, amount of time spent viewing each record, which computer terminal was used, and the contents of the report viewed or generated, plus an identification of every document viewed, copied, or printed, from September 1, 2014 to the present. Defendant objects that the topic is overbroad, irrelevant, and possibly covers privileged information. Plaintiff takes the position that the VA and its employees may have nefarious motives and may have misled Plaintiff and the Court. The Court is not persuaded by Plaintiff's argument. Information regarding when VA employees accessed decedent's medical records over a ten-year period is not proportional to the needs of the case and is not relevant to Plaintiff's claims. Defendant's request for protection as to Topic No. 58 is granted.

### c.  Plaintiff's Request for a Hearing

In addition to the parties' briefing, Plaintiff also asks the Court for a hearing on the motion for a protective order. Doc. 308, at 11. He asserts that the page limitations are inadequate to

address all his arguments in support of his positions. The Court has discretion whether to hold a hearing on any motion filed in this court. *See* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."); *see also* D. Kan. Rule 7.2 ("The court *may* set any motion for oral argument or hearing at the request of a party or on its own initiative.") (emphasis added); *Abrams v. Se. Mun. Bonds Inc.*, 138 F. App'x 88, 96 (10th Cir. 2005) ("A district court's decision whether to conduct hearings in order to resolve motions—even those which are vigorously disputed and may directly determine the outcome of the litigation—is reviewed for abuse of discretion.").

The Court has conducted multiple hearings on this issue and spent considerable time and resources reviewing the amended deposition notice, the parties' briefing, and other pertinent pleadings filed by the parties. After considering Plaintiff's request, the Court has concluded the briefs on this motion are sufficient to reach its decision. The Court thus denies Plaintiff's request for a hearing.

### d.  Conclusion

It is time for this deposition to move forward. This deposition has been contested and been litigated for several months and culminated in another highly contentious round of motion practice. In addition to consuming the parties' and Court's time, it has led to delays in the case. Fed. R. Civ. P. 1. mandates the "just, speedy, and inexpensive" determination of this action. To achieve these ends, the following deadlines apply:

> i.  Any objections pursuant to this order under Fed. R. Civ. P. 72 must be filed by **May 3, 2024**.

> ii.  The Rule 30(b)(6) deposition must occur on or before **June 14, 2024**.

As previously ordered, if the Defendant designates one corporate representative, then the deposition may last no longer than 7 hours. If the Defendant designates more than one witness,

then the deposition may last no longer than 4 hours per designee and shall not exceed 12 hours in total.  Doc. 280, at 3.

      **IT IS THEREFORE ORDERED** that Defendant's Motion for Protective Order, Doc. 298, is **GRANTED in part and DENIED in part** as set forth above.

      **IT IS FURTHER ORDERED** that any objection to this order under Fed. R. Civ. P. 72 must be filed by **May 3, 2024**.

      **IT IS FURTHER ORDERED** that the deposition must occur on or before **June 14, 2024**.

      **IT IS FURTHER ORDERED** that Plaintiff's request for a hearing is **DENIED.**

### III.    Plaintiff's Amended Motion to Strike Defendant's Retained Expert Witnesses

      The Court now turns to Plaintiff's amended motion to strike Defendant's retained experts.[8] Doc. 308.  Plaintiff advances three arguments in his motion.  First, Plaintiff argues Defendant failed to comply with the requirements of Fed. R. Civ. P. Rule 26(a)(2)(B) and because Defendant failed to provide a complete testimonial history for the three retained experts as required by Fed. R. Civ. P. Rule 26(a)(2)(B)(v) and that Dr. Pietz's report was not "signed by the witness."  Second, Plaintiff moves to strike Ms. Cheren as a retained expert for failing to identify what she means by "regulatory requirements" and "community standards of practice" as referenced in her report.  Third, Plaintiff argues Dr. Brangman's and Ms. Cheren's reports do not adequately disclose the facts or data considered by the witnesses in forming their opinions as required by Fed. R. Civ. P. Rule 26(a)(2)(B)(i) and (ii).  Last, Plaintiff moves to strike the designation of Ms. Cheren, Dr. Brangman, and Dr. Pietz, because Defendant failed to provide a fully compliant expert report, complete with

---

[8] As already discussed, Plaintiff's original motion to strike is moot.

case numbers and jurisdictional information, by the January 5, 2024, deadline.[9]  In the same vein,

Plaintiff moves for sanctions against Defendant.  *See* Doc. 302.  For the reasons stated below,

Plaintiff's motion is **DENIED**.

     **a.  Relevant Facts**

The experts at issue are Connie Cheren, R.N., Dr. Sharon Brangman, M.D., and Dr.

Christina Pietz, Ph.D.  Ms. Cheren and Dr. Brangman are Defendant's retained liability experts.  Ms.

Cheren was retained by Defendant to provide the opinion that the Dole VAMC provided care and

treatment to decedent that met both regulatory requirements and community standards of practice.

Doc. 308-3, at 2.  Dr. Brangman is a full-time physician licensed to practice medicine in New York.

Doc. 308-4, at 1.  She was retained by Defendant to provide the opinion that employees and staff at

the Dole VAMC met the standard of care in providing treatment to decedent.  She further opines

that decedent's fall on February 11, 2014, did not have a significant impact on his death.  Doc. 308-

4, at 2.  Dr. Pietz is Defendant's retained damage expert.  She is a psychologist who conducted a

Rule 35 exam on the Plaintiff and issued a report following the same.  Doc. 308-5, at 1.

Defendant disclosed its retained experts on January 5, 2024.  Doc. 243.  Plaintiff timely

served his technical objections on January 19, 2024.  Doc. 310-8, at 1-7.  *See also* Doc. 143, at 3

(providing that technical objections, such as whether all the information is present as required by

Rule 26(a)(2)(B), must be served within 14 days after service of the expert disclosures).  The parties

conferred about the alleged deficiencies, specifically that Defendant failed to provide an adequate

testimonial history under Fed. R. Civ. P. 26(a)(2)(B)(v).  Thereafter, Defendant provided

supplemental testimonial history for Dr. Brangman and Ms. Cheren.  Doc. 310-12, at 1-7.  After

more conferring, Defendant provided supplemental case information for Dr. Pietz to include case

---

[9] In his motion, Plaintiff states Defendant should have asked for an extension of the January 5, 2024, expert
disclosure deadline, but Defendant elected not to request such an extension.

numbers.[10]  Doc. 310-13, at 1-6.  Plaintiff found the supplementations to be unsatisfactory.  On February 20, 2024, Plaintiff emailed the Court requesting a pre-motion conference pertaining to his technical objections.  *See* Doc. 310-14.  The Court waived the any pre-motion requirements and gave a deadline of February 26, 2024, to file his motion.  Plaintiff timely filed his motion.  Doc. 302.

As previously stated, Plaintiff advances three arguments in support of his motion to strike Defendant's retained experts.  The Court will start with the appropriate legal standard and will then address each argument advanced by Plaintiff.

### b.  Legal Standard

Fed. R. Civ. P. 26(a)(2) governs the disclosure of expert testimony.  It provides, in relevant part, that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."  Fed. R. Civ. P. 26(a)(2)(A).  The Rules of Evidence cited in Rule 26(a)(2)(A) pertain to the standard for the admissibility of expert testimony, note the proper bases of an expert's opinion testimony, and generally allow an expert witness to express opinions without first disclosing the facts or data underlying the expert's opinion.  *See* Fed. R. Evid. 702, 703, and 705.  Federal Rule of Civil Procedure 26(a)(2)(A) "imposes a 'duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'"  *Neiberger v. Fed Ex Ground Package Sys.,*

---

[10] The briefing is not clear on what the additional issues were pertaining to Dr. Pietz' expert report. However, a review of Plaintiff's objections sent to defense counsel on January 19, 2024, reveal that Chadwell alleged that she did not disclose the facts or data she considered in forming her opinion.  *See* Doc. 310-8, at 6. He then requested Defendant to supplement her report with various documents.  *See id.* at 6-7.  Defendant provided supplemental case information on March 1, 2024.  *See* Doc. 310-13.  It appears Chadwell no longer seeks to strike her expert reports on the basis that she did not adequately disclose facts or data in forming her opinion.  However, even if he was still seeking to strike her report on that basis, that argument would fail because Plaintiff heavily redacted her report making it impossible for the Court to make that determination. *See generally* Doc. 308-5.

*Inc.*, 566 F.3d 1184, 1191 (10th Cir. 2009) (quoting Fed. R. Civ. P. 26(a) advisory committee's notes to 1993 amendments).

If an expert witness is "retained or specially employed to provide expert witness testimony" the disclosure must include a written report that includes the following information:

(i)     a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii)    the facts or data considered by the witness in forming them;

(iii)   any exhibits that will be used to summarize or support them;

(iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v)     a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi)    a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

An incomplete or preliminary report does not comply with Rule 26(a)(2). *Bruner-McMahon v. Sedgwick Cnty. Bd. of Comm'rs*, No. 10-CV-1064-KHV, 2012 WL 33837, at *2 (D. Kan. Jan. 6, 2012). However, the Federal Rules do "contemplate periodic supplementation, providing for both an update of the information contained in the report and the information provided through deposition of the expert testimony." *Paliwoda v. Showman*, No. 12-2740-KGS, 2013 WL 5938027, at *3 (D. Kan. Nov. 6, 2013) (citing *Holt v. Wesley Med. Ctr., LLC*, No. 00-1318-JTM, 2006 WL 5556006, at *1 (D. Kan. Jan. 25, 2006)).  Fed. R. Civ. P. 26(e)(1), (2) states

(e) Supplementing Disclosures and Responses.

(1) In General. A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:

(A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

(B) as ordered by the court.

> (2) Expert Witness. For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Federal Rule of Civil Procedure 37(c)(1) provides possible remedies for violations of Rule 26. In relevant part, it provides that "[f]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Sibley v. Sprint Nextel Corp.*, No. 08-2063-KHV, 2013 WL 1819773, at *7 (D. Kan. Apr. 30, 2013). *See also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002).

The relevant factors for determining whether the violation was substantially justified or harmless include: "1) the prejudice or surprise to the party against whom the testimony is offered, 2) the ability to cure any prejudice, 3) the potential for trial disruption if the testimony is allowed, and 4) the erring party's bad faith or willfulness." *Paliwoda*, 2013 WL 5938027, at *7. The burden to make that showing lies with the party who failed to make the required disclosure. *A. H., ex rel. Hohe v. Knowledge Learning Corp.*, No. CIV.A. 09-2517-DJW, 2010 WL 4272844, at *5 (D. Kan. Oct. 25, 2010). The court may order additional sanctions as set forth in Rule 37(c)(1), including the payment of the reasonable expenses and fees. Fed. R. Civ. P. 37(c)(1)(A)-(C). The primary goal of ordering sanctions against a party is to deter misconduct. *Paliwoda*, 2013 WL 5938027, at *7. The court should bear in mind that it is a "drastic sanction" to exclude expert testimony or strike an expert witness. *Id.* With this standard in mind, the Court turns to the objections in Plaintiff's motion.

### c. Plaintiff's Objections to Defendant's Expert Witness Disclosures

The Court will first address Plaintiff's objections to Defendant's expert witness disclosures, specifically, (1) the sufficiency of the case lists and testimonial history of the three experts, (2) the sufficiency of Dr. Pietz' signature in her expert report; and (3) whether the expert reports adequately disclosed the facts or data considered by the expert witnesses.  After addressing those objections, the Court will then address whether Plaintiff's requested relief is appropriate.

> ### i. Whether Defendant's Expert Witness Disclosures Comply with 26(a)(2)(B)(v)

Retained expert witness disclosures must contain a list of all other cases, during the previous four years, in which the expert testified at trial or by deposition.  Fed. R. Civ. P. 26(a)(2)(B)(v).  The identification of the cases should include the courts or administrative agencies, the names of the parties, the case number, and whether the testimony was at trial or by deposition.  *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 682 (D. Kan. 1995).  The information should allow a party to determine whether relevant testimony was given.  *Id.*  Another purpose of the disclosure requirement is to allow the adverse party to locate other testimony given by the expert witness.  *Id.*  At a minimum, the disclosure should obviate the danger of unfair surprise regarding the testimony and testimonial history of the expert witnesses.  *See Fergus v. Faith Home Healthcare, Inc.*, No. 2:18-cv-02330-JWL-TJJ, 2019 WL 511642, at *2 (D. Kan. Feb. 8, 2019).

The Court has reviewed, in detail, the expert reports Plaintiff attached to his amended motion.  Docs. 308-3; 308-4, Doc. 308-5.  In addition to the original expert reports, the Court has also reviewed the supplementation provided by all three expert witnesses.  Docs. 310-12; 310-13.  Originally, Ms. Cheren's report disclosed: (1) five instances of trial testimony, (2) four cases in which she gave testimony in arbitrations, and (3) fourteen depositions in which she testified.  Doc. 308-3, at 7-9.  No case numbers or jurisdictional information were provided in those disclosures.  Similarly, Dr. Brangman's report disclosed: (1) ten depositions in which he provided testimony and (2) eleven

cases in which he provided courtroom testimony.  The case list for Dr. Brangman also did not

include case numbers or jurisdictional information.  Doc. 308-4, at 6.  Dr. Pietz' report included an

extensive history of prior testimony that spanned nearly 15-pages of testimony.  Her case lists

provided the court in which she provided expert testimony as well as the month and year it

occurred; however, not all case numbers were provided.  Doc. 308-5, at 9-24.

On February 12, 2024, Defendant supplemented Ms. Cheren's and Dr. Brangman's report

with updated case lists that contained case numbers and jurisdictional information.  Doc. 310-12.

On March 1, 2024, Defendant supplemented Dr. Pietz' report with case numbers for nearly 60

different cases.  Doc. 310-13.

The three disclosures, along with the supplementations, comply with Fed. R. Civ. P.

26(a)(2)(B)(v) because they contain a thorough list of cases, complete with case names (and party

names), case numbers, the date of testimony, the court or administrative body, and whether the

testimony was by trial or deposition.  The three reports include all the information identified in

*Nguyen* as later applied in *Paliwoda*.  *See Nguyen*, 162 F.R.D. at 682; *Paliwoda*, 2013 WL 5938027, at *7.

The supplementations cured the previous deficiencies that were noted by the Plaintiff and provided

him with enough information to locate the testimony provided by the expert witnesses.  *Nguyen*, 162

F.R.D. at 882.

Moreover, Defendant supplemented Ms. Cheren's and Dr. Brangman's reports within 22-

days and Dr. Pietz' report within 41-days of Plaintiff's notice of alleged deficiencies.  Thus, the

Defendant complied with Fed. R. Civ. P. 26(e) and supplemented the requested information.  This

situation does not rise to the offense of a party intentionally serving an incomplete or preliminary

report which would plainly not comply with Rule 26(a)(2).  *Bruner-McMahon v. Sedgwick Cnty. Bd. of

Comm'rs*, No. 10-CV-1064-KHV, 2012 WL 33837, at *2 (D. Kan. Jan. 6, 2012).  The Federal Rules

do contemplate periodic supplementation in which a party may update the information contained in

the report.  *Paliwoda*, 2013 WL 5938027, at *3 (D. Kan. Nov. 6, 2013).  The Court finds that the

reports, with the supplementation provided, meet the requirements standards of Rule 26 and are

compliant with Fed. R. Civ. P. 26(a)(2)(B)(v).  Plaintiff's objections are overruled.[11]

        ii.    **Whether Dr. Pietz' report is properly signed pursuant to Fed. R. Civ. P. 26(a)(2)(B)**

Plaintiff argues that the Court should strike Dr. Pietz' expert report because it is not signed

as required by Fed. R. Civ. P. 26(a)(2)(B).  Indeed, the required disclosure must be "accompanied by

a written report—prepared and signed by the witness."  Fed. R. Civ. P. 26(a)(2)(B).  *See also Ngiendo*

*v. Cardinal Grp. Inv., LLC*, No. 2:20-CV-02393-HLT, 2023 WL 183840, at *2 (D. Kan. Jan. 13, 2023)

(stating that a retained expert's disclosure must be accompanied by a written report signed by the

witness).  However, in this case, Plaintiff's claim that Dr. Pietz' report is not signed is incorrect.

Doc. 308-5, at 6.  Dr. Pietz' report contains an electronic signature.  *Id.*  If Plaintiff takes issue that it

is an electronic signature, as opposed to a "wet" signature, he provides no support that an electronic

signature is insufficient.  Perhaps more importantly, Plaintiff is not challenging the *authenticity* of the

signature, but instead objects to its form.  The Court is unpersuaded.  The Court finds that Dr.

Pietz' electronic signature is sufficient and declines to strike her report on that basis.  *See Paliwoda*,

2013 WL 5938027, at *4 (observing that an unsigned expert report was cured by a report with an

electronic signature).  Plaintiff's objection is overruled.

        iii.    **Whether Defendant's Expert Witness Disclosures Comply with 26(a)(2)(B)(i) and (ii) - Written Reports of Ms. Cheren and Dr. Brangman**

Plaintiff alleges that Ms. Cheren's and Dr. Brangman's reports are insufficient and not

---

[11] While the Court is not factoring Plaintiff's conduct into its analysis, the Defendant points out that Plaintiff did not provide case numbers in his lists for his retained experts—Dr. Denis Knight and Patricia Quigley. The Court finds it frustrating that Plaintiff is doggedly pursing matters that he was guilty of mere months ago. In other words, it would seem Plaintiff is holding Defendant to a standard he does not hold himself to.

compliant with Rule 26(a)(2)(B)(ii).  Specifically, he alleges that they failed to disclose facts or data vaguely alluded to in the report.  The Court will address Dr. Brangman's and Ms. Cheren's report separately, beginning with Dr. Brangman's Report.

### 1.  Dr. Brangman's Report

Plaintiff alleges that Dr. Brangman's report did not disclose all the facts or data she considered when forming her opinion as well as the basis and reasons for them.  Plaintiff's motion advances this argument by way of one paragraph:

> Dr. Brangman's report fails to disclose, as required by Rule 26(a)(2)(B)(i) & (ii), all of the facts or data considered by the witness in forming her opinions and the basis and reasons for them.  An expert report, such as Dr. Brangman's, that does not explain the "how" and "why" does not comply with Rule 26.  Rule 26 envisions an expert report so detailed that in many cases the report may eliminate the need for a deposition . . . it is evident that Dr. Brangman's report would not eliminate the need for a deposition.

Doc. 308, at 8 (internal citations omitted).

Plaintiff provides no additional explanation or support regarding how Dr. Brangman's report is insufficient under Fed. R. Civ. P. 26(a)(2)(B)(i) and (ii).  After reviewing Dr. Brangman's report, the Court finds that she adequately sets forth the basis and reasons for her opinions under Fed. R. Civ. P. 26(a)(2)(B)(i).  She explains at the outset of her report that she is a full-time licensed physician that specializes in geriatric and internal medicine, with thirty years of experience in nursing home care.  In a detailed four-page report, she explains the past medical history of decedent, possible contributing causes to decedent's death, various ailments decedent suffered from, the circumstances leading to his fall, and her medical opinion based on a reasonable degree of certainty.  She opines and explains that the Defendant met the appropriate standard of care when providing treatment to decedent and that decedent's fall had no impact on his death.

Likewise, the Court finds that Dr. Brangman's report adequately identifies the facts and data she relied upon to form her opinion Fed. R. Civ. P. 26(a)(2)(B)(ii).  "As the advisory committee

notes to Rule 26 state, the addition of "facts or data" to the Rules in 2010 was intended, amongst

other reasons, to be "interpreted broadly to require disclosure of any material considered by the

expert, from whatever source, that contains factual ingredients.  The disclosure obligation extends to

any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those

relied upon by the expert." *Paliwoda*, 2013 WL 5938027, at *5 (quoting Fed. R. Civ. P. 26(a)(2)

advisory committee notes to 2010 amendments).  Dr. Brangman's report identifies 17 documents

that she reviewed for purposes of preparing her report.  In her report, she summarizes information

from those documents and explains how that information is relevant to her expert opinions.  There

is no reason to believe this is not a comprehensive list of the facts and data upon which she relied to

form her opinion.

The Court finds that Dr. Brangman's report complies with Rule 26(a)(2)(B)(i) and (ii) but

makes no determination regarding whether Dr. Brangman's report and purported testimony are

admissible.  Plaintiff's objections are overruled.

### 2.  Ms. Cheren's Report

Plaintiff also seeks to strike Ms. Cheren's report on several grounds.  First, Plaintiff argues

that she failed to comply with Fed. R. Civ. P. 26(a)(2)(B) because her report does not adequately

explain the phrases "regulatory requirements" or "community standards of practice."   Next, he

advances the same argument advanced in relation to Dr. Brangman - that Ms. Cheren's report did

not disclose all the facts or data she considered when forming her opinion as well as the basis and

reasons for them as required by Fed. R. Civ. P. 26(a)(2)(B)(i) and (ii).  The Court will address these

in reverse order.

Plaintiff alleges that Ms. Cheren's report did not disclose all the facts or data she considered

when forming her opinion as well as the basis and reasons for them.  Plaintiff's argument is identical

to what was set forth for Dr. Brangman and is limited to one paragraph.

After reviewing Ms. Cheren's report, which is certainly lacking in some respects, the Court finds that the report meets the *technical* requirements of Fed. R. Civ. P. 26(a)(2)(B)(i) and (ii).  At the outset, Ms. Cheren explains that she has a thirty-year history working with long term care facilities in understanding and meeting federal regulations and guidance.  She opines that "the staff at Robert J. Dole provided care and treatment to Decedent Edwin Chadwell while he was [a] resident at the facility that met both regulatory requirements and community standards of practice."  Doc. 310-16, at 2.  She explains decedent's past diagnoses and how based on her review of the records, the staff followed the care plan and met standards of care.  She references opinions made by Plaintiff's expert witnesses and rebuts those opinions by citing to specific dates, clinical reports, and recounts relevant factual events.  Further, Ms. Cheren set forth a list of the documents she reviewed and relied upon in forming her opinions and there is nothing to suggest she relied on outside information in forming her opinion.  Accordingly, the Court finds that facially, the report contains the information as required by Rule 26(a)(2)(B)(i) and (ii) but makes no determination regarding any substantive objections or whether Ms. Cheren's report and purported testimony are admissible.

Plaintiff also seeks to strike Ms. Cheren's report because she does not adequately explain the phrases "regulatory requirements" or "community standards of practice" in her report under Fed. R. Civ. P. 26(a)(2)(B).  Defendant argues that that Plaintiff's challenge is a *Daubert* challenge couched as a "technical objection."  The Court agrees that Plaintiff's challenge is substantive and better addressed as a *Daubert* challenge.

At this stage of the litigation, Plaintiff's objections should be confined to technical objections related to the sufficiency of the written expert disclosures (e.g., whether all the information required by Rule 26(a)(2)(B) has been provided) and need not extend to the *admissibility of the expert's proposed testimony.*  Doc. 143, at 9 (emphasis added).  Technical objections made pursuant to Fed. R. Civ. P. 26(a)(2)(B) are those objections that attack an expert report on the basis that the

report does not sufficiently describe the facts and scientific methodologies on which the expert replied. *Delgado v. Unruh*, No. 14-CV-01262-JAR, 2017 WL 957437, at *8 (D. Kan. Mar. 13, 2017) (citing *McCoy v. Whirlpool Corp.*, 214 F.R.D. 646, 649 (D. Kan. 2003)).

A *Daubert* challenge relates to how the expert is qualified to express her opinion, how her methodology is generally accepted, how the expert formulated her opinion, and whether her intended testimony should be admissible at trial. *McCoy*, 214 F.R.D. at 649. *See also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592, 113 S. Ct. 2786, 2796, 125 L. Ed. 2d 469 (1993). In this case, Plaintiff's arguments go beyond simply stating Ms. Cheren's report lacks sufficient detail or that she did not adequately describe her scientific methodology. Instead, his argument relies upon whether her reference to the "regulatory requirements" or "community standards of practice" sufficiently supports her expert report. Whether her references to those phrases adequately forms an expert opinion that should ultimately be admissible at trial is for the District Judge to determine in the context of a *Daubert* challenge.

Plaintiff's technical objections under Rule 26(a)(2)(B) are overruled.

### d. Plaintiff Request to Strike Defendant's Expert Witnesses and for Sanctions

Typically, no analysis under Fed. R. Civ. P. 37(c)(1) would be warranted because the Court has already found that Defendant's expert disclosures are compliant with Fed. R. Civ. P. 26(a)(2)(B) and overruled Plaintiff's objections.[12] However, Plaintiff advances the argument that sanctions are warranted because a complete report was not provided until after Defendant's January 5, 2024, expert deadline. As previously discussed, the Court found that Defendant's supplementation cured the previously noted deficiencies under Fed. R. Civ. P. 26(a)(2)(B)(v). Even though some instances

---

[12] Plaintiff states that he is also seeking sanctions under Rule 37(b) and Rule 16(f) but provides no additional argument.

of testimony in the case lists were missing case numbers, the Court finds that Plaintiff was still able to effectively prepare for depositions and for trial. *See Neiberger v. Fed Ex Ground Package Sys., Inc.*, 566 F.3d 1184, 1191 (10th Cir. 2009). Additionally, the Court found that both Dr. Brangman and Ms. Cheren included sufficient facts and date as required by Fed. R. Civ. P. 26(a)(2)(B)(ii).[13] Therefore, since the Court has already found compliance with Rule 26, the Court denies Plaintiff's request for relief.

However, even if the Court found that Defendant's expert reports were deficient and not compliant with Rule 26, the preferable remedy for a deficient expert disclosure is to order supplementation. *See, e.g., Mounger v. Goodyear Tire & Rubber Co.*, No. 99-2230-JWL, 2000 WL 1466198, at *4 (D. Kan. Sept. 22, 2000). The circumstances do not warrant precluding the three experts from testifying at trial or striking their expert reports, nor would any sanction achieve the primary goal of deterring misconduct. *Paliwoda*, 2013 WL 5938027, at *7. Striking an expert report in its entirety is a drastic sanction and the court should order supplementation when practicable. *Paliwoda*, 2013 WL 5938027, at *7. The original disclosures were made in good-faith and Plaintiff had sufficient information to discern the nature of the testimony. Moreover, the deficiency did not rise to the level of "surprise" that is contemplated when striking an expert report under Rule 37. *See Sibley v. Sprint Nextel Corp.*, No. 08-2063-KHV, 2012 WL 13027064, at *3 (D. Kan. Dec. 13, 2012). The Court holds that even it found the expert reports to be deficient, it would decline to strike the expert reports. Plaintiff's request for sanctions is denied.

Plaintiff also argues that but for the alleged deficiencies, he would have taken a different approach to numerous previously taken depositions. He further argues that if none of Defendant's retained experts are struck by the Court, the Court should set a supplementation deadline and

---

[13] The Court also found that Dr. Pietz' report was compliant even though her report contained her electronic signature. *See supra.*

require Defendant to produce the retained expert in Wichita. It is unclear whether Plaintiff is asking the Court to reopen prior depositions or for leave to depose Defendant's retained experts. The Court denies any request to reopen depositions of previously deposed witnesses. As already mentioned, the reports and information Plaintiff was provided still allowed him to effectively prepare for depositions. *See Neiberger*, 566 F.3d at 1191. He was well on notice of the anticipated testimony. Regarding Defendant's retained experts, the parties previously agreed that depositions of damage experts, including Dr. Pietz, may occur after the discovery deadline. Doc. 280, pp. 4-5. Further, Plaintiff withdrew his intent to depose Dr. Brangman and Dr. Cheren. *Id.* at 4. Consequently, the Court denies Plaintiff's request to depose Dr. Cheren and Dr. Brangman.

### e. Plaintiff's request for a hearing

Similar to his response to the motion for a protective order, Plaintiff requests the court for a hearing on this motion. Doc. 308 at 11 ("Pursuant to D. Kan. Rule 7.2, Plaintiff requests oral argument on Plaintiff's Motion to Strike"). For the same reasons stated earlier in this order, the Court concludes that the briefs on this motion are sufficient to reach its decision. *See* Fed. R. Civ. P. 78(b); *see also* D. Kan. Rule 7.2; *Abrams v. Se. Mun. Bonds Inc.*, 138 F. App'x 88, 96 (10th Cir. 2005); *United States ex rel. Schroeder v. Medtronic, Inc.*, No. 17-2060-DDC-BGS, 2024 WL 1095664, at *13 (D. Kan. Mar. 13, 2024) (reaching same conclusion). The Court thus denies Plaintiff's request for a hearing.

**IT IS THEREFORE ORDERED** that Plaintiff's amended motion to strike, Doc. 308 is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion to strike, Doc. 302, is **MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff's request for a hearing is **DENIED.**

## IV.   Future Deadlines and Hearings

The Court is now in the position to set the final pretrial deadlines and dates. The Court

intends to enter a schedule that assures the parties have adequate time to complete all remaining pretrial activities.  This case schedule is intended to be firm and will not be revised, amended, or reset absent extraordinary circumstances.  The Court sets the following deadlines:

| SUMMARY OF DEADLINES AND SETTINGS | |
|---|---|
| Event | Deadline/Setting |
| Proposed pretrial order due | **June 28, 2024** |
| Pretrial conference (in-person before Judge Severson) | **July 10, 2024, at 10:00 a.m., Courtroom 406** |
| Potentially dispositive motions (e.g., summary judgment) | **August 7, 2024** |
| Motions challenging admissibility of expert testimony | **August 7, 2024** |
| Trial — ETT 6-8 days | **T/B/D** |

All potentially dispositive motions (e.g., motions for summary judgment), must be filed by **August 7, 2024**.  The Court plans to decide dispositive motions, to the extent they are timely filed and briefed without any extensions, approximately 60 days before trial.

All motions to exclude testimony of expert witnesses pursuant to Fed. R. Evid. 702-705, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), or similar case law, must be filed by **August 7, 2024**.

Pursuant to Fed. R. Civ. P. 16(a), a pretrial conference is scheduled for July 10, 2024 at 10:00 a.m. in the District of Kansas U.S. Courthouse, 401 N. Market, Room 406, Wichita, Kansas.  No later than June 25, 2024, defense counsel must submit the parties' proposed pretrial order in Word format as an attachment to an e-mail sent to *ksd_severson_chambers@ksd.uscourts.gov*.  The proposed pretrial order must not be filed with the clerk's office.  It must be in the form available on the Court's website:

*https://ksd.uscourts.gov/civil-forms*

The parties expect the non-jury trial of this case to take approximately six to eight trial days in Wichita, Kansas.

## V.   Conclusion

To summarize, the Court ruled on two primary motions: Defendant's motion for a protective order and Plaintiff's amended motion to strike Defendant's retained expert witnesses. Last, the Court reset the pretrial deadlines.

**IT IS THEREFORE ORDERED** that Defendant's motion for a protective order, Doc. 298, is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Plaintiff's amended motion to strike Defendant's retained expert witnesses, Doc. 308, is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion to strike, Doc. 302, is **MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff's request for oral argument on both motions is **DENIED**.

**IT IS FURTHER ORDERED** that objections under Fed. R. Civ. P. 72 to any of the orders set forth herein must be filed no later than **May 3, 2024**.

**IT IS FURTHER ORDERED** that the Rule 30(b)(6) deposition occur by **June 14, 2024**.

**IT IS FURTHER ORDERED** that the deadline to submit a proposed pretrial order is **June 28, 2024.**

**IT IS FURTHER ORDERED** that a final pretrial conference is set for **July 10, 2024, at 10:00 a.m., in courtroom 406 before Magistrate Judge Brooks Severson**.

**IT IS FURTHER ORDERED** that the dispositive motion and *Daubert* motion deadline is **August 7, 2024.**

**SO ORDERED.**

Dated April 26, 2024, at Wichita, Kansas.

/s/ BROOKS G. SEVERSON
Brooks G. Severson
United States Magistrate Judge